## Grand Island Banking Co. v. Jacob Shoemaker.

[Filed January 2, 1891.]

1. **Evidence**: Handwriting: Comparison. Under section 344 of the Code, evidence respecting handwriting may be given by comparisons made, by experts or by the jury, with writings of the same person which are proved to be genuine.

2. ———: ———: ———. Where certain orders on the school fund drawn by the defendant, who was treasurer of the school district during the years 1887–88, were shown to be genuine, and were introduced in evidence to enable the jury to make a comparison of handwriting with the signature to a note purporting to have been executed during those years, but which the defendant denied having executed, *held*, proper testimony.

Error to the district court for Hall county. Tried below before Harrison, J.

*O. A. Abbott*, for plaintiff in error, cited: 1 Greenleaf, Ev., sec. 578; *Randolph v. Loughlin*, 48 N. Y., 458; *Van Wyck v. MacIntosh*, 14 Id., 442; *Vinton v. Peck*, 14 Mich., 294; *Doe v. Newton*, 5 Ad. & E. [Eng.], 514; *Jumpertz v. People*, 21 Ill., 375; *State v. Fritz*, 23 La., 55; *Williams v. Drexel*, 14 Md., 566; *Smith v. Walton*, 8 Gill [Md.], 86; *Calkins v. State*, 18 O. St., 366; *Bragg v. Colwell*, 19 O. St., 413; *Strother v. Lucas*, 6 Pet. [U. S.], 763.

*Thompson Bros.*, contra, cited: *Huff v. Nims*, 11 Neb., 365; *Calkin v. State*, 14 O., 222; *Fisher v. Butcher*, 19 O., 406.

Maxwell, J.

This action was brought by the plaintiff against the defendant on a promissory note as follows:

"$300.          GRAND ISLAND, NEB., June 27, 1887.

"On the first day of January, 1888, I promise to pay Thos, E. Hall, or order, $300, at —— Bank of ——, for value received, negotiable and payable without defalcation or discount, with 8 per cent interest from date, said interest to become as principal and bear — per cent interest if not paid; and, if suit or action is instituted to collect this note or any part thereof, — promise to pay —— dollars as attorney's fees in said suit or action.

Post office, Grand Island; county, Hall; state of Nebraska.                    "JACOB SHOEMAKER.

Witnessed by ——."

The defendant denied the execution of the note, and on the trial of the cause the jury found a verdict in his favor, upon which judgment was rendered.

The testimony tends to show that at the date of the alleged note a person calling himself Thomas E. Hall called upon the defendant and represented that he was agent and attorney for the Excelsior Hydro-Carbon Burner Company, of San Francisco, California, and desired to appoint the defendant agent for the county of Hall during the years 1887 and 1888, and induced the defendant to enter into the contract as follows:

"The Excelsior Hydro-Carbon Company, of San Francisco, California, does this 27th day of June, A. D. 1887, authorize, constitute, and appoint Jacob Shoemaker their true and lawful agent to sell their hydro-carbon burner attachments for use in any stove, range, furnace, grate, or boiler, in the township of ——, county of Hall, and in the state of Nebraska, during the years of 1887 and 1888. Now, therefore, to all whom it may concern, be it known that for and in consideration of the sum of three hundred dollars paid to us, the receipt whereof is hereby acknowledged, the said Excelsior Hydro-Carbon Burner Company, by their attorney, Thomas E. Hall, the same being a payment of $3 royalty each one hundred burner attachments,

leaving a balance due of $6 each on said burner attach-
ments at the factory, the said Excelsior Hydro-Carbon
Burner Company shall furnish the burners to supply act-
ual sales, and as burners are ordered from time to time,
the said Excelsor Hydro-Carbon Burner Company shall
receive and accept therefor negotiable promissory notes
quoted good by some local bank.   The said Excelsior Hy-
dro-Carbon Burner Company agree that in case of failure or
neglect on their part to furnish said Jacob Shoemaker with
burners, as above conditioned, within a reasonable length
of time, the said Jacob Shoemaker shall have full power
and authority to manufacture the same for the before
mentioned territory during the years of 1887–1888.   The
agent hereby appointed agrees to use due diligence in the
sale and introduction of these burners, and that his orders
will be in lots of not less than ten at any one time.   Set-
tlement shall be made on the first day of January, 1888.
No orders for burners shall be filled within forty days
from the date of this contract.

"P. O., Grand Island, County of Hall, Nebraska.

"Having read or heard read the above contract we cer-
tify that it is our agreement in writing, entered into as a
speculation.

                    "EXCELSIOR HYDRO-CARBON BURNER CO.,
                    "Office, 118 Eddy street,
                              "A. H. PROCTOR,
                                   "General Manager.
                         "By THOS. E. HALL,
                                   "Att'y for Co.
                         "JACOB SHOEMAKER,
                                   "Local Agent."

It is contended on behalf of the plaintiff that this con-
tract was executed in duplicate and that one copy was re-
tained by Hall and the other by the defendant.   Hall also
testified that the defendant, executed the note in question.
This is denied by the defendant, and the court permitted a

comparison of the handwriting of the defendant in other writings, principally school orders signed by him in the years 1887–8, as treasurer of school district No. 38, of Hall county. These orders were shown to be genuine and actually signed by the defendant.

Section 344 of the Code provides that "Evidence respecting handwriting may be given by comparisons made, by experts or by the jury, with writings of the same person which are proved to be genuine."

The comparison of handwriting, therefore, is expressly authorized under our statute. The question here presented was before this court in *Huff v. Naims*, 11 Neb., 363, the opinion being delivered by LAKE, J., and it was held that the jury were competent to make the comparison between the writing in the instrument sued on and that made in their presence either with or without the aid of experts. That, in our view, is a correct statement of the law.

Mr. Hall, so far as appears from this record, is one of those "sleek swindlers" who travel over the country seeking to defraud any person whom he can prevail upon to become an alleged agent, etc. And persons who purchase notes from strangers of that kind cannot close their eyes to the fact that in all probability such notes have been obtained by some artifice or trick and could not be enforced between the original parties. It is a matter of regret that so few of the persons who engage in the business that Mr. Hall seems to have been engaged in are prosecuted, convicted, and sent to the penitentiary.

From the numerous cases which have come before this court it is apparent that this failure is rather from a want of prosecution than from a lack of evidence to convict.

The defendant testifies in substance that Hall came to him and desired to appoint him agent for Hall county under a promise to furnish an expert to acompany him and put in the burners. The defendant was to take the expert to various persons who were financially responsible, and

render some other service, for all of which services the Burner Company was to pay him six dollars for each burner sold. He also testifies that the contract above set forth was drawn about sunset and that as he could not read very well, he asked Hall to read it for him, but that he (Hall) did not read it correctly. It is a matter of surprise that any person would trust an entire stranger in this manner, but the plausible tale of Hall in regard to the value of the alleged burner, and the profits to be made therefrom, seems to have captivated the defendant. It is pretty evident that Shoemaker's signature on the note is an imitation, traced perhaps. That it is not genuine is clearly established. The verdict, therefore, is right. There is no error in the record and the judgment is

AFFIRMED.

THE other judges concur.