JOSEPH S. CHRISTENSEN, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED DECEMBER 23, 1909. No. 15,797.

1. **Appeal:** INSTRUCTIONS: REVIEW. Where the evidence would sustain no verdict except that rendered by the jury, assigned errors in giving or refusing instructions may be disregarded on appeal.

2. **New Trial:** NEWLY DISCOVERED EVIDENCE: DISCRETION OF COURT. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the court, and will not be overruled unless a clear abuse of discretion is shown.

3. **Street Railways:** INJURY TO PEDESTRIAN: NEGLIGENCE. The evidence examined, discussed in the opinion, and *held* sufficient to sustain the verdict of the jury.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*J. L. Kaley* and *H. H. Bowes*, for appellant.

*John L. Webster* and *W. J. Connell*, contra.

DEAN, J.

Joseph S. Christensen sued the defendant on March 4, 1905, to recover for personal injuries caused by reason of the alleged negligence of an employee of defendant in running one of its electric street railway cars in Omaha. The case was tried to a jury, and a verdict returned in favor of the company, upon which judgment was rendered, and plaintiff appeals.

The petition alleges, in substance, that the injury occurred about 9 o'clock in the evening of April 18, 1903, as plaintiff was in the act of stepping on defendant's track on Twenty-fourth street near Willis avenue; that the car approached him from the south at such a high rate of speed that he was unable to cross the track without being struck by the car; that, while he was in the act of stepping back from the track, he was suddenly struck on the leg by the car fender, and the left side of his face came in contact with the car; that he was thereby knocked down, and his right hand bruised by the car wheels, so that it became necessary to amputate two fingers; that at the time of the accident it was dark, and the street was lighted by an arc lamp suspended over the center of the intersection of Twenty-fourth street and Willis avenue; that, but for the negligence of the motorman, he might have seen and discovered plaintiff's presence and stopped the car; that the motorman negligently omitted to sound the gong or to give plaintiff any warning of the car's approach; that plaintiff was walking north, with his back toward the approaching car, and was unaware of its approach, and, but for the motorman's negligence, he could have stopped the car before the accident; that, if the motorman had

dropped the car fender, the injury would have been avoided; that plaintiff is thereby permanently disabled, and for two months has been unable to earn wages, and has expended $50 for medical attention, by reason of the injury, and is damaged in the sum of $5,000.

The defendant's answer, in substance, alleges that it operates a double line of electric street railway cars on Twenty-fourth street; that the north-bound cars pass along the east track and the south-bound cars pass along the west track at frequent intervals, all of which plaintiff well knew; that at the time of the accident plaintiff, without looking or listening to discover the approach of a car, carelessly and negligently, while crossing the street diagonally, and without exercising ordinary care, stepped up to the west rail of the east track at a time when a car was passing north thereon, and thereby came in contact with the front end of the car, but back of the vestibule thereof. Defendant denies that the motorman saw plaintiff at the track long enough before the accident to stop the car; alleges that prior to the accident, and as soon as he observed the dangerous position of plaintiff, the motorman sounded the gong, and stopped the car as soon as it was possible to do so; that when plaintiff approached the west rail of the east track he was within 6 or 7 feet thereof, and in front of the approaching car, and that it was impossible to stop the car within that space; that there was no reason why plaintiff could not have seen the approaching car; that the headlight was lighted, and within the car was lighted with electric lamps, and was thus plainly visible to plaintiff for a distance of several blocks; that when the accident occurred the car was running at the ordinary rate of speed; that plaintiff was intoxicated at the time, which was then unknown to defendant, its agents and servants. The defendant denies generally the averments of the petition that are not specially denied in the answer, and alleges that whatever injuries the plaintiff sustained were the result of his own negligence.

The plaintiff, in his reply, admits that he was intoxi-

cated when in the act of crossing the street at the time
the injury occurred, and alleges that just before the ac-
cident his movements and acts clearly indicated his con-
dition, and that the motorman by the exercise of reason
able and ordinary care and diligence could have discerned
that he was intoxicated. He denies generally the allega-
tions of new matter in the answer.

Twenty-fourth street in the city of Omaha extends north
and south, and it is undisputed that defendant maintains
thereon two parallel street railway tracks where its elec-
trically propelled cars run at frequent intervals, the north
bound cars running on the east track, and the south-
bound cars running on the west track, and that the scene
of the accident complained of is located on Twenty-fourth
street near the intersection of Willis avenue, where · a
lighted electric arc lamp was suspended at the time plain-
tiff was injured. It is also undisputed that on the night
and at the hour in question it was dark, cloudy and misty
and had recently been raining. It is likewise without
dispute that at about 9 o'clock in the evening of the acci-
dent plaintiff left a saloon on the west side of Twenty-
fourth street, and about two blocks south of where the
accident occurred, and that he was then intoxicated.

Plaintiff testifies that when he left the saloon he walked
north on the west side of Twenty-fourth street about two
blocks, when he left the sidewalk and started to cross the
street in a diagonal direction, and just before he reached
the middle of the street he turned to the north and walked
in that direction between the east and west tracks about 60
feet, when he heard the approaching car, and, suddenly
realizing that it was just behind him, he turned to get
out of the way, when the car fender, which had not been
lowered, struck the inside of his left leg about midway
between the ankle and the knee. He says the blow threw
him toward and in collision with the car, the latter as it
approached coming in contact with his face. with such
violence that he thereby became unconscious. He testifies
that the injury to his leg was such that it was black and

blue, and that it caused him to limp for about two weeks. As a result of the blow, he says he fell in such a way that the wheels of the car ran over the first and second fingers of his right hand, so that it became necessary to amputate them. He does not know anything about the rate of speed at which the car was running, and says he heard no warning. On cross-examination he admits that a car approaching the point of the accident from the south can be seen for a distance of about five blocks, and that, if he had looked in that direction, he thinks he could have seen the car, and says he knew the cars passed there every few minutes, but he did not think about it at that time. It is in evidence that plaintiff's hearing and eyesight are good.

F. Gilliam testified, on the part of plaintiff, that he was in the saloon for about an hour before the plaintiff's departure, and saw him go away intoxicated; that one William Holmes, who was in charge of the saloon that evening, requested him to follow the plaintiff and see that he reached his home safely; and that, in pursuance of Holmes' request, he left the saloon about 5 minutes after plaintiff, and followed him, but at a distance of about one block behind, and, gaining on him, saw plaintiff start to cross Twenty-fourth street in a northeasterly direction. Gilliam says he was a little over half a block away when the accident occurred, but that he shortly thereafter arrived at the scene, and overheard a statement made by some one to the effect that he had "run over him all right enough," to which some one replied, "I told you you would run over that drunken man," or words to that effect. He does not profess with certainty to identify either spokesman, but thought one of them was an employee of the company. When the car stopped he says it was about three car lengths beyond the point where the accident occurred and where plaintiff was lying. He says he did not hear the gong sounded.

Five or six witnesses were called by defendant, who were present immediately after the accident occurred, and

they testified that they had no recollection of seeing Gilliam there at the time. Witness King, the motorman, and witness Mason, who was with him, testified that they did not use the language imputed to them by Gilliam, nor did they hear the language or the import thereof repeated by any person. Holmes denied that he ever requested Gilliam to follow the plaintiff, and testified that he did not know when Christensen left the saloon. The material part of Gilliam's testimony is uncorroborated, and its probative value before the jury was evidently destroyed by the testimony of several witnesses who knew him, and who testified that his general reputation for honesty, truth and veracity in Omaha was bad. That the jury refused to consider his testimony is established by the affidavit of one of plaintiff's attorneys, who says that after the trial several of the jurors who sat in the case so informed him, without any solicitation.

W. E. Mason, a former motorman in the employ of defendant, testified that at the time of the accident he was a passenger, standing in the left side of the vestibule with the motorman who was running the car, and that he was looking ahead. He says the tracks were damp and wet, a condition that makes it difficult to make a quick stop. He saw plaintiff coming from the northwest and proceeding to the southeast between the east and west tracks, and when within about two feet of the car halted, and then lunged forward, when the front corner of the car just behind the vestibule struck him, and he fell. He says that when plaintiff halted he called out to Mr. West, the motorman: "Hold on! There comes a drunk"—and that the motorman shut off the current, tapped the gong, and immediately applied the brakes, and that the car came to a sudden stop. He says he was not talking to the motorman. He testified that plaintiff was not on the east track at any time before the accident, and that the fender did not strike him. When the car stopped he says plaintiff was lying near the trucks of the rear wheels. Dr. Adams, now a practicing physician, testified that on the night of

the accident he was the conductor of the car that inflicted the injury, and says that just before the accident he heard the gong, and that the car came to a stop so suddenly that it threw him forward, and that when it stopped plaintiff was lying even with the back platform. C. H. Peterson, a teamster, was a passenger, riding on the rear platform, and says he heard the gong sounded, and the car stopped so short that it threw him from the rear rail of the car to the platform. Dr. Ellis, the physician who attended plaintiff after he was injured, testifies that he discovered upon the person of his patient no injuries except the injury to his hand and the one on the left side of his face, and he does not recall that any complaint was made to him of any others. He says he made a careful examination of plaintiff for the purpose of discovering the extent of his injuries, and did not find anything aside from those mentioned that were sufficient to attract attention. G. M. King, now a carpenter, was the motorman on the car with which plaintiff came in contact. He says the evening was cloudy and rainy, and that the electric headlight of the car was lighted, and the interior was illuminated by the electric lamps. He corroborates the testimony of witness Mason with reference to his position and opportunity to observe the objects which the car approached, and says that just as they arrived under the arc light Mason said, "Look out!" and just about at that instant he saw plaintiff to the left of the track, and that he immediately shut off the power and reversed his car and put on the brake, struck the gong, and let down the fender. He says that he did not see anything about plaintiff to indicate that he was under the influence of liquor at the time, and that he, the motorman, was looking straight ahead when Mason made the exclamation. He says the fender of the car did not touch the plaintiff, and when the car stopped he was lying on the street opposite the rear trucks. The conductor and three or four witnesses testify that the car was running at the rate of about ten or twelve miles an hour when the accident occurred. It is established by the

testimony of several witnesses that at the point of the accident and for several blocks to the south of it the street is almost level.

Plaintiff makes complaint of several of the instructions given by the court, but, in the present state of the record, we cannot consider them because we are unable to discover from the record how the jury would have been justified in rendering any other verdict than the one it did render.

He also complains that the trial court erred in overruling his motion for a new trial on the ground of newly discovered evidence. We have examined this point, and believe the ruling of the trial court in this respect is without error. The newly discovered evidence, as shown by the record, is mostly cumulative, and besides plaintiff does not show that he did not know that one of the main witnesses upon whom he relies was about to leave Omaha, and that he did not, with that knowledge, have sufficient time before the witness departed to take his deposition. The record fails to disclose that diligence on the part of plaintiff that would entitle him to a new trial on the ground of newly discovered evidence. The testimony which he says he expects to procure was discovered by him within a few days after the return of an adverse verdict, while the record discloses an interval of more than a year intervened between the date of the accident and the trial. *Smith v. Graves,* 24 Neb. 545. One of the witnesses whose testimony plaintiff desires to procure has already contributed to the record two or more conflicting affidavits, and it is shown the testimony of this witness would be opposed to that already given by plaintiff upon a material point. *St. Paul Harvester Co. v. Faulhaber,* 77 Neb. 477.

Finding no reversible error, the judgment of the district court is

AFFIRMED.