BENJAMIN L. ALLENDER, APPELLEE, v. CHICAGO & NORTH-WESTERN RAILWAY COMPANY, APPELLANT.

FILED APRIL 3, 1930. No. 27078.

*Wymer Dressler, Robert D. Neely* and *Hugo J. Lutz,* for appellant.

*M. F. Harrington* and *George M. Harrington, contra.*

HEARD before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

Plaintiff shipped four carloads of cattle over defendant railroad from Oral, South Dakota, to Fremont, Nebraska, and instituted this action in the district court for Holt county to recover damages to said cattle on account of negligence, rough handling, and also for the loss of three head

and the loss by death of one, and unreasonable delay in transit.

Defendant denied negligence on its part, and alleged that if financial loss accrued to plaintiff said loss was due to plaintiff's negligence.

Plaintiff replied to defendant's answer by a general denial.

After the admission of all of the evidence, the district court took from the jury all consideration of the question of unreasonable delay in transit on the part of defendant.

The jury returned a verdict for plaintiff in the sum of $1,059.69, upon which judgment was entered, and from which judgment defendant appeals.

Defendant contends that the verdict is not sustained by sufficient evidence, and that the court erred in refusing to direct a verdict for defendant. These two assignments may be considered together.

In determining the sufficiency of the evidence all of the evidence must be taken into consideration.

Plaintiff, in support of his contention as to the rough handling of the cattle by, and the negligence of, defendant, related what occurred on the trip, that the movement of the train was unusually rough, intimated that he was thrown from his seat in the caboose on account of the rough handling of the train *en route,* and also stated that he got out several times to examine the cattle, and that in practically every instance there were some cattle down in the cars and that he was obliged to get them up with a prod pole. He also introduced the testimony of witnesses, who were experienced in the cattle business, who saw the cattle and had examined them before they were shipped, and also introduced the testimony of other experienced cattlemen to show the condition of the same cattle at the time they arrived at Fremont, where they were to be marketed, and that at that time the cattle were bruised, gaunt, lame, and the hair had been scraped off certain of the animals, that some were bleeding from their heads, the hoofs of others were bleeding, and other general statements as to their appearance and condition.

*Contra* to this evidence defendant introduced evidence to show that nothing unusual happened on the trip, that it was necessary and incident to the shipping of cattle that they be prodded up and made to stand, and produced train records as to the handling of the train and the location of the cars containing the cattle in the train.

Defendant cites the case of *Quinby v. Union P. R. Co.,* 83 Neb. 777, to the effect that the carrier is not liable for injuries to live stock due to their propensities to injure each other from fright or other causes. The case cited is distinctively different from the case at bar. The stock in question in that case was left on the tracks of defendant company for about three hours. There is a distinction where stock is detained in a car standing still for three hours and where stock is transported over tracks a distance of approximately 500 miles and consuming $35\frac{1}{2}$ hours on the trip. We have no quarrel with the law as stated in the case cited, but we cannot agree with counsel for defendant that the case at bar is governed by the same rules as in the case cited. We are inclined to accept the decision of this court in case of *Herold v. United States Express Co.,* 98 Neb. 217, in which this court held: "While a common carrier of live stock is not an insurer against injuries unavoidably resulting from the inherent nature or propensities of the animals, yet, where animals are shipped, it is its duty to exercise such care as the circumstances indicate is reasonably necessary in order to safely transport them, and if, on account of a failure to exercise such care, the animals are injured, are lost, or die, the carrier may be liable for damages."

From the evidence it appears that there was a controverted issue of fact upon the proposition of negligence of defendant company and the rough handling charged to it. This being true, the court was in duty bound to submit the issue of negligence and rough handling to the jury, and, as this court has said, where there is a controverted issue of fact, it would be erroneous for the trial court to give a peremptory instruction. The trial court was correct in refusing to direct a verdict for the defendant.

Defendant assigns as error the receiving of the testimony of plaintiff and his witnesses, Moore and Borders, as to the market value of the cattle at Fremont, said testimony being without foundation, contrary to law, hearsay, and incompetent.

Plaintiff's witness, Colonel Borders, testified that he was an experienced cattle dealer and in the cattle business at the place of unloading the cattle, that he auctioned cattle once each week, that he personally auctioned these cattle, that he received the quotations on the cattle market over the radio each day, that he read the Stockmen's Journal and the newspapers, that he was acquainted with the prices of cattle at the place of unloading on the day they arrived there, and gave his opinion as to the market value of the cattle at Fremont.

Plaintiff, an experienced cattle dealer, testified as to the condition of the cattle, their kinds and classes, their average weights at the place of loading, and their appearance and condition at the place of unloading.

Witness Moore, an experienced cattleman, saw these cattle on different days at the place of loading, knew their sizes and kinds, had bought and sold cattle, and was acquainted with the market values of the cattle at the place where they were unloaded and to be marketed.

Such testimony is competent and admissible to show the market values of cattle at the place where they are to be marketed. *Westphalen v. Atlantic N. & S. R. Co.*, 152 Ia. 232; *Hudson & Co. v. Northern P. R. Co.*, 92 Ia. 231.

In the *Westphalen* case, *supra*, the trial court admitted the testimony of men who were experienced in the purchase and handling of cattle, and who had been in the habit of buying and selling cattle on their judgment, and who had found by experience that they could by inspection estimate the weights of such animals with accuracy, and the appellate court held the testimony of such witnesses competent from observation of the cattle at their destination as to their average weight at the place where loaded for transportation.

In the *Hudson* case, *supra,* the court held that a witness is competent to speak as to the market value of live stock, if he bases his opinion upon the market reports and quotations.

Defendant objected to the competency of this testimony for the reason that there were no sales' records of any other cattle shown as of January 14, 1928, the date that most of these cattle were auctioned, and that stock journals, which are competent evidence, were not received in evidence to show the state of the market on that date, that no record of other sales was shown except the sale of one bull calf, which was not sold by the pound, and, further, that the witness Moore was not in Fremont on the date the cattle arrived there or were sold.

Defendant cites the case of *Trennt v. Chicago, B. & Q. R. Co.,* 107 Neb. 406, wherein this court held that market reports in journals, properly authenticated, are competent evidence of the state of the market. Defendant contends that in the case at bar no such market reports and journals were received in evidence.

In the case of *Chicago, B. & Q. R. Co. v. Todd,* 74 Neb. 712, it was held that market reports and journals, such as the commercial world relies upon, are competent evidence of the state of the market.

In the *Trennt* case, *supra,* the testimony of a witness was held to be incompetent who testified that he did not know the market at or near the time in question, nor remember the number, kind, or class of property under consideration, or any other similar transaction, and whose sole statement bearing on such question was what he recollected three years later. In that case it was held that, while market reports, properly authenticated, are competent evidence of the state of the market, it does not follow that they are the only competent evidence thereof. This is true. However, weighed against the evidence of plaintiff and his witnesses in the case at bar, as hereinbefore set out, we believe plaintiff and his witnesses competent, under the circumstances of this case, to testify to the market values of the stock at the place of unloading.

Defendant further complains of and cites as error the admission of evidence introduced on behalf of plaintiff as to the market values of the cattle at the place of loading.

Plaintiff's evidence shows in this respect that the witnesses saw the cattle at the place of loading, knew the kinds and sizes of the cattle at that point, were experienced cattlemen, bought and sold cattle on their judgments, and could tell the weights of cattle by inspection with accuracy. The authorities in support of the admissibility of this evidence have heretofore been cited.

Defendant criticizes the admissibility of this evidence on the theory that the witnesses were not testifying from written memoranda made at the time, and that the memorandum from which plaintiff testified was made during the progress of the trial, and that without it such evidence, after a lapse of eleven months, was wholly incompetent. Persons of experience in the cattle business, knowing the kinds and sizes of the cattle purchased and having estimated at one time their weights and values, may recall the particular cattle in question when the subject-matter is called to their attention.

Counsel for defendant contend in this action that the subject of estimated weights and shrinkages is not a proper basis for recovery for rough handling in transit, as long as the issue of unreasonable delay had been withdrawn from the jury's consideration. While most of the cases upon which recovery is based for estimated weights and shrinkage in transit have been instituted and the recovery based upon unreasonable delay in transit, it seems apparent that on a long trip, even when the question of unreasonable delay has been withdrawn from the jury's consideration, negligence and rough handling on the part of defendant company could cause shrinkage in the animals, and that plaintiff is not bound to base his action strictly on the question of unreasonable delay, if the evidence warranted the findings of negligence and rough handling on the part of the defendant over a long trip such as the one in this case.

All of the instructions of the court have been examined

and considered together and properly reflect the law of the case and contain the substance of the instructions tendered by defendant.

Defendant's next assignment of error is that the court refused to grant a new trial on the ground of newly discovered evidence. In support of its motion defendant introduced an affidavit of one Jay Harrington who stated that he had purchased 17 head of mixed cattle from plaintiff on the 13th of January, 1928, the day before the cattle were auctioned at Fremont by Colonel Borders. The testimony was that Colonel Borders, who handled the cattle for plaintiff, was not clear as to the number of cattle that were sold to the said Harrington at private sale, but recalls that it might have been as high as 18 or 20 head. Plaintiff placed the number sold to Harrington at 16 head. Defendant contends that, inasmuch as the case went to the jury on the question of the loss of three head of cattle, and it was shown by the affidavit of Harrington that he had purchased 17 head, defendant accounted for one of the extra head alleged to have been lost and a new trial should have been granted.

Further supporting its contention, defendant states that exhibits A and 2 offered and received in evidence show a change by erasure and a change in the figures, so that the original and copy are not consistent with each other, with the intimation that a forgery was evident, and that this case was conceived upon these alleged changes as indicated by defendant in referring to these exhibits. We are inclined to the view that the exhibits, having been offered and received in evidence with the changes as they existed, were taken advantage of by defendant and that matter argued to the jury.

Defendant contends that 19 head of cattle were sold to Jay Harrington. Plaintiff's testimony was to the effect that 16 head had been sold to Mr. Harrington. This evidence appears in the record and was probably argued and stressed by defendant to the jury. The fact remains that from the record it appears that 143 head of cattle were loaded at Oral for shipment to Fremont. At Fremont, by

count, one calf was dead and three head of cattle were missing. The jury had a right to weigh the evidence, as hereinbefore set forth, for the reason that there is a direct conflict in the evidence as to the number of cattle alleged to have been lost. We feel that all the evidence was before the court and that the jury had the full benefit of it.

The trial judge overruled the motion for a new trial. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the court, and, on appeal, the ruling thereon will not be disturbed, unless a clear abuse of discretion is shown. *Christensen v. Omaha & C. B. Street R. Co.*, 85 Neb. 694; *Peterson v. Kouty*, 103 Neb. 321.

We conclude that the judgment of the lower court must be, and is hereby,

AFFIRMED.