DALE MATHINE ET AL., APPELLANTS, V. KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., A CORPORATION, APPELLEE.

202 N. W. 2d 191

Filed November 17, 1972. No. 38452.

248

Ross & Schroeder, for appellants.

James D. Conway, E. J. Jackson, and Robert A. Miller, Jr., for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

PER CURIAM.

Plaintiffs brought this action against the defendant gas company to recover for damage to a mobile home and its contents from fire which occurred on January 25, 1967, alleged to have resulted from the negligence of the defendant in the installation of equipment con-

verting the furnace in the mobile home from liquified petroleum to natural gas usage. The conversion kit was furnished by the plaintiffs. The alleged negligence was the failure of the defendant to install a gas pressure regulator which was a part of the kit. At the close of the plaintiffs' evidence the defendant moved for a directed verdict on the grounds of the insufficiency of the evidence to present a jury question. The motion was sustained. Plaintiffs filed a motion for new trial which was overruled and the plaintiffs appeal.

Plaintiffs assign as error the direction of the verdict and the sustention of the defendant's objection to the opinion testimony of one Herman Nolte as to the cause of the fire.

The following is a summary of the pertinent evidence introduced by the plaintiffs. They ordered and received from the manufacturer of the furnace a natural gas conversion kit. The kit consisted of orifices and a pressure regulator. The plaintiffs requested the defendant to convert the furnace in the mobile home from liquified petroleum to natural gas use and this the defendant agreed to do. An employee of the defendant came to do the work and the plaintiffs gave him the conversion kit. The employee installed the orifices but not the gas regulator. Mrs. Mathine testified that the employee, during the course of the work, came to her with the pressure regulator and asked her what it was and if it was to be installed on the furnace. She told him she did not know, but obtained for him the furnace instruction manual which came with the mobile home. The two of them examined the manual together but found nothing with reference to the regulator.

The manual itself was offered and received in evidence at the trial. It contains the following:

"10. ADJUSTING THE UNIT

"General Controls KX36HR combination gas control valve is used on all models *except the 2681B*. This

model uses a General Controls B57 combination valve. . . .
"Gas Controls

"*Included in the KX36HR Control are pressure regulator,* solenoid gas valve, and main manual gas valve. (See Figure 10.) The pressure regulator is adjustable between 3 and 4 inches w.c. *On furnaces equipped for L.P. Gas, working parts have been removed from the pressure regulator.* The valve provides 100% shutoff to both the pilot and main burner.

"*The B57 combination valve* is shown in *Figure 11.* It *includes* a main manual gas valve, diaphragm valve, safety valve which provides 100% shut-off to both the pilot and main burners, and *a pressure regulator on the natural gas control.*

"The pressure regulator is set at 3½" W.C. and is adjustable between 3 and 4 inches W.C.

"*There is no pressure regulator on the L.P. gas valve.*" (Emphasis supplied.)

Figure 10 in the maintenance manual shows a picture of a control including a pressure regulator attached. Figure 11 shows a picture of another control. It appears to contain a regulator within the unit itself.

The plaintiffs retained the pressure regulator when it was returned to them by the defendant's employee when he had finished his work and it was introduced into evidence at the trial.

There was also received and introduced into evidence a furnace operations manual which plaintiffs had received at the time of the purchase of the mobile home. This operations manual included a warranty and in appropriate spaces provided therein there appear in inked handwriting the model number, 2682B, the serial number of the unit, the date of installation, and the name of the installer. This evidence would be sufficient, in the absence of objection, to establish that the furnace was the type which was equipped with the control shown in figure 10.

The conversion was made on September 22, 1966. The

furnace functioned satisfactorily until January 25, 1967, when Mrs. Mathine and the children discovered flames coming from the furnace. She testified that it was "roaring at that time." The fire department was called. It extinguished the fire but not before the mobile home and contents were badly damaged.

After the fire the furnace and mobile home were inspected on separate occasions by Herman Nolte and Jeff Banta. Nolte had been in the heating and air conditioning business since 1946 and was an experienced furnace installer and repairman. He had attended manufacturer's schools on furnace installation and repair. He testified with reference to furnaces that "basically the entrance of gas and burning of gas and exhaust of the fumes is pretty much alike on all of them," and that they all have blowers, burning chambers, valves, and pressure regulators. He further testified that a furnace such as the plaintiffs', while it was burning L.P. gas, did not require a regulator because there was a regulator on the L.P. tank itself, but that upon conversion the natural gas "pressures would have to be a little bit different, and it should have a regulator right on the furnace." The court thereafter struck an immediately following answer to the same effect because "I don't think you have laid the foundation for your question as to this furnace that you are talking about." The court and counsel had apparently overlooked the fact that the insertions in the operations manual identified the plaintiffs' furnace as a model 2682B which, according to the installation manual, uses a KX36HR control from which parts of the pressure regulator have been removed for liquified petroleum use.

Nolte made his inspection of the plaintiffs' furnace on February 3, 1967. At that time he was shown by Mr. Mathine the pressure regulator. This regulator he identified from the witness stand and stated he was familiar with the type of regulator and knew how it worked. He testified that its purpose was "to keep the

pressure constant so that your . . . flame would have proper combustion." He also testified his inspection on February 3 showed that the furnace had no gas pressure regulator on it. It had only a control valve without a pressure regulator.

He noted that the wooden furnace enclosure was charred opposite the openings or "knockouts" of the furnace. The wood was separated from the furnace about 1½ inches. He was asked if he had an opinion as to the cause of the fire. He stated he did. When asked what that opinion was, an objection by the defendant was sustained. The plaintiffs then made the following offer of the witness' answer: ". . . because of the absence of the pressure regulator, the furnace overfired thereby causing flame to occur outside of the natural combustion chamber and traveling in such a direction as to place itself outside the knock-out holes heating the wood paneling to its flush (sic) point and thereby causing the ensuing fire." The ground of the defendant's objection was that "no proper foundation laid to qualify the witness as being competent, able to act as an expert witness in giving the cause of the fire, or being able to testify based on the foundation made as to the cause of the fire."

Jeff Banta, a deputy state fire marshal, was called by the plaintiffs. He testified his duties included the investigation of the causes of fires and the making of reports of such investigations to the State Fire Marshal in Lincoln. He had been a deputy state fire marshal for 22 years and had special training which included methods of investigating and determining the causes of fires.

Banta was asked by the fire chief of Minden, Nebraska, to investigate the fire in question. On February 7, 1967, he made an inspection of the plaintiffs' burned mobile home. His purpose was to "determine the cause of the fire . . . and where it started." He started the inspection at the furnace. He stated: "This is

where the fire itself in our opinion started." He then went on to describe what he had observed and stated: "It started at the heating plant or furnace." He was asked if he had an opinion as to the cause of the fire and he stated he did. He was then asked his opinion and in response he stated: ". . . there was an overburn in the furnace that caused the fire; overheating." He testified there was no pressure regulator on the furnace, but was not asked to express his opinion as to whether the absence of the regulator caused the overheating. This apparently because he did not consider himself qualified in that respect, stating: "I had to get somebody to help me on that."

The basic question that must be answered is whether the above evidence will support a finding that the defendant did not exercise in making the conversion that degree of care which the law requires. It is generally recognized that one engaged in the installation of gas appliances must exercise a high degree of care consistent with the dangerous nature of the commodity to be used in the appliance. Fonda v. Northwestern Public Service Co., 134 Neb. 430, 278 N. W. 836.

The plaintiffs' theory of the case was that the alleged failure of the defendant to include the pressure regulator in the conversion installation was negligence or evidence of negligence. This is an area in which some expertise is required and the average person unfamiliar with the mechanics of gas furnaces would not know what the effect of the failure to install the gas regulator would or could be. In order for such failure to constitute negligence or evidence of negligence one needs to know whether such failure can, could, or is likely to result in harm of the general type which occurred, and whether a skilled or knowledgeable installer or repairman would, in the exercise of that degree of care the law imposes upon him, not fail to install the regulator. There was no direct evidence to this effect either by expert testimony, or someone skilled in the field, or by introduction of

approved industry standards or codes such as those of the National Fire Prevention Association or those promulgated by the gas industry. It is true the installation manual, exhibit 4, would lead to the conclusion that such a pressure regulator would be required, but there is nothing there to establish directly or by reasonable inference that the lack of the pressure regulator would be dangerous. Perhaps, as far as that manual is concerned, the absence of the regulator could simply result in the failure of the furnace to function properly. If that were the case then there would be no evidence of negligence of a type likely to cause the kind of harm which occurred and hence no jury issue.

Nolte's direct testimony was simply that the purpose of the regulator was "to keep the pressure constant so that your . . . flame would have proper combustion." That testimony leads to no conclusion that the absence of the pressure regulator is dangerous in the sense that it might cause a fire. Banta testified, as we have noted, the cause of the fire was the overheating of the furnace but he was not able to state that this was attributable to the absence of the pressure regulator. We must assume, of course, there are other possible causes of the overheating of a furnace such as is here involved. It did apparently function satisfactorily for a period of 4 months following the conversion.

This brings us back to the offer of the opinion testimony of Nolte which was to the effect that the cause of the fire was the failure to install the pressure regulator. Was the trial court correct in ruling that Nolte was not competent to express opinion as to causation? As we will note shortly, the offered testimony has implications extending beyond the issue of proximate cause.

There is no exact standard for fixing the qualifications of an expert or skilled witness. Sioux City & P. R.R. Co. v. Finlayson, 16 Neb. 578, 20 N. W. 860, 49 Am. R. 724. Such a witness will be deemed qualified

if, and only if, he possesses special skill or knowledge respecting the subject matter involved so superior to that of men in general as to make his formation of a judgment a fact of probative value. 32 C. J. S., Evidence, § 457, p. 98; Kohler v. Ford Motor Co., 187 Neb. 428, 191 N. W. 2d 601. An expert may be qualified by his formal education or practical experience. Allender v. Chicago & N.W. Ry. Co., 119 Neb. 559, 230 N. W. 102; Luedeke v. Chicago & N.W. Ry. Co., 120 Neb. 124, 231 N. W. 695, 71 A. L. R. 912. The trial court is given large discretion in determining whether or not the witness' qualification to state his opinion has been established and this discretion will not ordinarily be disturbed on appeal unless there is an abuse of that discretion. Whittington v. Nebraska Nat. Gas. Co., 177 Neb. 264, 128 N. W. 2d 795. An expert may base his opinion upon facts observed by him personally. Kennedy v. Woods, 131 Neb. 217, 267 N. W. 390.

Whether an expert opinion is necessary or permissible to establish the cause of a fire would depend upon the nature of the case. Neal v. Missouri P. Ry. Co., 98 Neb. 460, 153 N. W. 492; Annotation: Cause of Fire— Opinion Evidence, 88 A. L. R. 2d at 247. Who may be competent to testify as an expert in determining the cause or origin of a fire may depend upon the type of the particular fire in question. 88 A. L. R. 2d 253. In Neal v. Missouri P. Ry. Co., *supra,* no expert opinion was permitted because it was within the competency of the jury itself to determine from the facts in evidence the cause of the fire.

As applied to the evidence in this particular case, it requires no expertise to know that if flames project outside a furnace and remain in contact with wood or other combustibles for a sufficiently long time, such material will ignite. This is within the competence of the average layman and juryman and expert testimony would be superfluous.

On the other hand, what might cause the projection

of the flames in the first place may not be within the competence of the average layman or juryman. Electricians, for example, have been held competent to testify to the cause of a fire where the evidence tends to show that the fire was of electrical origin. Sellers v. Montana-Dakota Power Co., 99 Mont. 39, 41 P. 2d 44; Brown v. Eakins, 220 Ore. 122, 348 P. 2d 1116. See, also, Crisman v. Southwest Central Rural Elec. Coop. Corp., 397 Pa. 414, 155 A. 2d 621.

It seems clear to us the qualifications of Nolte were such that he was qualified to give his opinion that the absence of a pressure regulator caused the furnace to overfire resulting in flaming occurring outside the combustion chamber of the furnace through the knockout holes where the flames could come in contact with combustible material.

It is to be observed that a trained and experienced furnace repairman could be expected to know the standards and requirements of a furnace conversion such as is here involved and what would be the possible or probable consequences of a failure to perform some particular element of the conversion. If after qualification for experience or education or both, an expert or skilled witness testifies that he does know and does have an opinion on the particular point in issue, he would normally be qualified to give that opinion. It, of course, may be that the opinion is in fact not well founded or it involves a matter on which expert or skilled witnesses may disagree, but this may be shown by opposing experts and the jury must decide. We hold the trial court abused its discretion in sustaining the objection to the opinion of Nolte.

We now return to the question of whether the evidence received and that properly offered was sufficient to permit a jury to find the defendant was in fact negligent. Because of the failure of the plaintiffs to introduce and direct evidence of standards applicable to such conversions (specifically as to the necessity of the

inclusion of the pressure regulator), and the likely or probable consequences of the failure to include the regulator, a close question is presented. It is a question of inferences. When the defendant moves for a directed verdict, he admits as true the evidence of the plaintiff who is then entitled to the benefit of every reasonable inference deducible from the evidence submitted. Fonda v. Northwestern Public Service Co., *supra*; Driekosen v. Black, Sivalls & Bryson, Inc., 158 Neb. 531, 64 N. W. 2d 88; Wisnieski v. Coufal, 188 Neb. 200, 195 N. W. 2d 750.

The answer of Nolte was relevant and competent for two purposes. Not only on the probable cause of the fire, but on the general question of whether the failure to install a pressure regulator in converting this particular model of furnace from liquified petroleum to natural gas use could result in overheating and fire outside the furnace. The previously quoted provisions of the installation manual indicated such regulators were needed but did not indicate why. Nolte's offered testimony supplied that gap.

Based on the foregoing, we believe if the jury accepted the foregoing testimony and evidence as true, the following inferences of negligence could reasonably be drawn by them. A gas pressure regulator is required to be installed in this model furnace in converting it to natural gas use; and that at least one of the reasons for installation is to prevent the possibility of the furnace overheating and projecting flames from the combustion chamber through knockouts to the exterior of the furnace. It could reasonably then conclude a furnace repairman in the exercise of the care required would or ought to know this and the failure to make such installation was negligence.

REVERSED AND REMANDED.

CLINTON, J., dissenting.

I dissent. Rule 8a2(3), Revised Rules of the Supreme Court, 1971, provides in part as follows: ". . . that

consideration of the cause will be limited to errors assigned and discussed."

The assignment of error relative to exclusion of the opinion of Nolte has not been discussed in the plaintiffs' brief, either in the statement of facts or in argument, and no authorities are cited.

There was no evidence received to show that the lack of the regulator could or might cause the overheating and that if such was the case the installer should have known it. Both of these factors depended upon the opinion which was excluded. I have carefully read the record and considered the plaintiffs' contentions. That examination discloses that the excluded opinion testimony was critical to plaintiffs' case both on the fact of negligence and the question of proximate cause. Because of the failure of the plaintiffs to comply with Rule 8a2(3), I would affirm the judgment.

WHITE, C. J., joins in this dissent.

BOSLAUGH, J., dissenting.

I agree with Judge Clinton that the plaintiffs' failure to discuss the assignment of error relating to the ruling on the objection to the testimony of the witness Nolte waived the error. The case is decided, therefore, on the basis of the plain error rule.

A ruling as to the qualifications of an expert witness is within the discretion of the trial court and ordinarily will not be disturbed in the absence of a clear abuse of discretion. Whittington v. Nebraska Natural Gas Co., 177 Neb. 264, 128 N. W. 2d 795. I find it difficult to say that there was such a clear abuse of discretion in this case that it constituted a plain error.