AETNA CASUALTY & SURETY COMPANY, A CORPORATION,
APPELLANT, V. DON NIELSEN AND VELMA NIELSEN, APPELLEES.

382 N.W.2d 328

Filed February 28, 1986.   No. 85-167.

Gary L. Dolan of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

James P. Fitzgerald of McGrath, North, O'Malley & Kratz, P.C., for appellees.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired.

PER CURIAM.

· Appellant, Aetna Casualty & Surety Company, sued appellees, Don and Velma Nielsen, husband and wife, on a guaranty which the Nielsens deny they executed. Aetna appeals from the judgment of dismissal entered pursuant to the jury's verdict, assigning as error the rulings of the trial court which permitted a witness to testify as an expert concerning the authentication of signatures. We affirm.

This appeal results from the retrial mandated by *Aetna Cas. & Surety Co. v. Nielsen*, 217 Neb. 297, 348 N.W.2d 851 (1984), *overruled in part*, *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985), because of a faulty jury instruction bearing on the genuineness of the Nielsens' signatures.

At that retrial the Nielsens, to countervail the opinion of Aetna's expert that they had signed the guaranty in question, adduced the testimony of a university professor of history.

During his 25 years of teaching, the witness had made a study of deciphering "difficult" handwriting, had examined approximately 200,000 pages of documents, and had worked with others in the field of handwriting. At the time of trial he was engaged in writing a book for the National Endowment for the Humanities on deciphering writing which is hard to read. He testified that deciphering such writing is related to the task of authentication because one cannot authenticate that which he cannot read correctly. In the course of his career, he had compared and authenticated "dozens" of signatures and documents. He listed the characteristics one studies to determine the genuineness of writing as including the slant, alignment, spacing, pen lifts, and feathering used in forming letters and words. He testified further that one also looks for the presence or absence of line wavers found in tracings of writing but not in spontaneous writing. The witness expressed no opinion as to whether the questioned signatures were in fact those of the Nielsens. Rather, in response to whether there were things that came to his mind bearing on the authenticity of the Nielsens' signatures on the guaranty, the witness compared for the jury the Nielsens' questioned signatures on the guaranty with samples of their genuine signatures and pointed out a number of variations between the characteristics of the questioned and genuine signatures.

Aetna contends that the trial court abused its discretion in allowing this witness to so testify, as, Aetna claims, he was not qualified by knowledge, skill, experience, training, or education in the field of signature authentication. In essence, Aetna's argument is that one skilled in deciphering writing which is hard to read is not by that fact qualified to authenticate disputed signatures.

The operative rule, as Aetna recognizes in its brief, is that a trial court's ruling in receiving or excluding expert testimony will be reversed only when there has been an abuse of discretion. See, *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985); *State v. Miner*, 216 Neb. 309, 343 N.W.2d 899 (1984); *Herman v. Lee*, 210 Neb. 563, 316 N.W.2d 56 (1982); *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971). The specific question therefore becomes whether it can

be said that the trial court's rulings are so untenable as to have unfairly deprived Aetna of a just result. See, *Bump v. Firemens Ins. Co.,* 221 Neb. 678, 380 N.W.2d 268 (1986); *Younkin v. Younkin,* 221 Neb. 134, 375 N.W.2d 894 (1985).

Neb. Rev. Stat. § 27-702 (Reissue 1979) provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The trial court's rulings under that statute must be viewed in light of the judicially recognized fact that it is not possible to establish an exact standard for determining the qualifications of expert or skilled witnesses. See, *Herman v. Lee, supra*; *Mathine v. Kansas-Nebraska Nat. Gas Co., Inc.*, 189 Neb. 247, 202 N.W.2d 191 (1972).

Further, Neb. Rev. Stat. § 25-1220 (Reissue 1979) provides: "Evidence respecting handwriting ·may be given by comparisons made, by experts or by the jury, with writing of the same person which is proved to be genuine." It has been held that § 25-1220 permits comparisons between known genuine writing and the disputed writing to be made by a jury either with or without the aid of experts. *First Nat. Bank & Trust Co. v. Cutright*, 189 Neb. 805, 205 N.W.2d 542 (1973); *Grand Island Banking Co. v. Shoemaker*, 31 Neb. 124, 47 N.W. 696 (1891); *Huff v. Nims*, 11 Neb. 363, 9 N.W. 548 (1881). Section 25-1220 appears to be a legislative acknowledgment of the fact that there is no generally recognized formal means of acquiring "knowledge, skill, training, or education" in the field of authenticating disputed signatures. There is no generally recognized testing and certification of one as a "handwriting expert."

The controlling question thus becomes whether the trial court abused its discretion in concluding, pursuant to the requirements of § 27-702, that such specialized knowledge as the witness had would assist the jury to understand the evidence. The trial court did not err in so concluding. The witness had studied handwriting, did have experience in authenticating signatures, and was experienced in what to look

for in performing that task.

Aetna's argument really goes to the question of what weight the witness' testimony should be given, not whether the testimony was admissible. The weight of expert testimony is for the trier of fact, in this case the jury. *Person v. Red Lion Inn*, 217 Neb. 745, 350 N.W.2d 570 (1984); *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25 (1979). The jury resolved that issue in favor of the Nielsens, and they have a right to keep the benefit of that verdict. *Vacek v. Ames*, 221 Neb. 333, 377 N.W.2d 86 (1985).

AFFIRMED.