HAROLD MISCHNICK, BY AUGUST MISCHNICK, HIS NEXT FRIEND, APPELLANT, v. IOWA-NEBRASKA LIGHT & POWER COMPANY, APPELLEE.

FILED NOVEMBER 29, 1933. No. 28687.

*Boehmer & Boehmer,* for appellant.

*Crossman, Munger & Barton* and *Flansburg, Lee & Sheldahl, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and BEGLEY and HORTH, District Judges.

PAINE, J.

This is an action for damages for personal injuries sustained by a five-year-old boy by reason of a fire or explosion, alleged to have been caused by a defective gas meter and connecting pipes. At the close of the plaintiff's evidence, the trial judge sustained a motion to direct a verdict for the defendant, and plaintiff appealed.

Among the facts disclosed by the pleadings and the evidence are: That the family of the plaintiff lived in a two-story, six-room, stucco house, under which there was a full basement with a cement floor. The house was heated by a hot air furnace, using coal for fuel, located in the furnace room, 16 by 13 feet in size, which was inclosed clear to the ceiling with partition. The gas service pipe and meter of defendant company were in the southwest corner of this furnace room, the meter being nine feet from the furnace door, and the service pipe entering the basement about three feet two inches above the floor, and had been in use for many years. Directly beneath the meter was a cardboard box, holding at this time waste paper and rubbish, being wrappings of Christmas presents.

The plaintiff's father banked the fire, closed the furnace door and the door to the furnace room, and retired about 9 p. m., all of the family sleeping on the second floor. About 4 a. m., December 28, 1931, the father and mother awoke and found the house filled with smoke and gas. They rushed downstairs, opened the front door, and called to neighbors, and an alarm of fire was sent in. They found the stairs in flames, and could not get back upstairs for the two little boys. The firemen arrived and the boys were carried down a ladder, and were treated first in the yard and then taken to a hospital. Fire Captain Barney was the first person to go in the basement, and found that a large hole had been burned through two boards of the partition above the box of

rubbish. Terrific heat was caused by gas escaping from a joint of the feed-pipe, and flames of the burning gas were shooting out for a distance of 8 or 10 feet near the meter. The firemen shot a stream of water against this flame, directing it upward, and then shut off the supply of gas below the meter at the intake pipe, and then put out the fire. The two little boys were taken to the Lincoln General Hospital, where the younger died, and the older one, being the plaintiff, was treated for monoxide poisoning and pneumonia, and the attending physician testified that he had never fully recovered from the effects of the fire and the exposure.

The plaintiff charged that the negligence of the company consisted, among other things, in a failure to inspect the pipes after changing over to the use of natural gas, and in permitting the service pipe and joints thereof to become and remain in a bad state of repair, which allowed gas to escape, and that a leak developed in such service pipe and joints, and gas accumulated in the furnace room and became ignited by fire from the furnace, and caused the fire in the house; that the joints in the service pipe and meter were sufficient to conduct manufactured gas, but that natural gas is a drier gas, which had dried out the gaskets used to tighten the joints, and that the company had failed to properly inspect the same.

The superintendent of gas distribution of the defendant company testified that the service pipe belongs to the property owner, and if it needs repair the defendant company repairs it, but charges the cost to the customer, but that the company installs the meter, which is owned by the company.

The plaintiff relied upon these errors for reversal: That the court erred in sustaining the motion for a directed verdict, and erred in sustaining objections to evidence offered on the part of the plaintiff, especially in not allowing the plaintiff to prove that, on the morning after the fire, gas was escaping through a joint in the

service pipe and could be ignited there, and in excluding evidence of an employee of defendant that 'he repaired leaks in the joints of the service pipe in said house two months after the fire; and erred in excluding evidence that the door leading to the furnace room had been fastened the night before the fire and was open the next morning.

The defendant insists that the trial court was right in directing a verdict, because there was no evidence of any negligence on the part of defendant company, and, further, that it was not a case for the application of the rule of *res ipsa loquitur*, because the plaintiff, having alleged specific acts of negligence, was required to prove such negligence, and failed; that it appears from the testimony of the appellant's own witnesses that there was only a possibility that the fire had been caused by escaping gas, and that it was not a probability. That evidence of the condition of gaskets, pipes and meter after such parts had gone through an intense fire does not prove the condition of such parts prior to the fire, and that evidence relating thereto was properly excluded. That the examination made by Fire Captain Barney after the fire disclosed, according to his testimony, that the fire started first in the box of rubbish, and then burned the boards in the partition above it, and while such evidence discloses where the fire started, it does not, according to Mr. Barney, tell how the fire started. Against this, is the evidence of Professor Frankforter, that in his opinion it did not originate there.

It is possible that the fire may have been caused by a leak in the gas pipe, or by spontaneous combustion in the box of rubbish, or there might have occurred a slight explosion in the furnace, which threw out a flame which ignited some combustible substance, or it might have occurred in some entirely different manner. Proof is entirely lacking as to its exact cause.

There is some testimony that, prior to the fire, gas had been smelled in this home. However, the evidence does

not disclose that it might not have escaped from some burner. This testimony did not prove that the equipment was in bad repair, or that the company was negligent.

The doctrine of *res ipsa loquitur* proceeds on the theory that, under special circumstances which invoke its operation, the plaintiff is unable to specify the particular act of negligence which caused the injury, but if the petition alleges particular acts of negligence, then the plaintiff, in order to recover, must establish the specific negligence alleged, and the doctrine of *res ipsa loquitur* cannot be applied. 45 C. J. 1225; *Marshall Window Glass Co. v. Cameron Oil & Gas Co.*, 63 W. Va. 202; *Knies v. Lang*, 116 Neb. 387.

The appellant bases his right to recover on inferences not proved by the facts, and negligence cannot be predicated upon an inference drawn from another inference, for it is well settled that actionable negligence may not be predicated upon an inference drawn from another inference, but if the negligence is only supported by an inference, such inference must be supported by some fact established by direct evidence. *St. Marys Gas Co. v. Brodbeck*, 114 Ohio St. 423.

In a number of cases cited by the plaintiff, gas leaks occurred in the main in the street, and gas came into houses and injured persons, but such cases are hardly applicable to the facts proved in this case. In *Hollon v. Campton Fuel & Light Co.*, 127 Ky. 266, it was held that evidence as to the condition of the gas apparatus the following morning after the fire was improperly admitted. Where evidence of leaking pipes, allowing the escape of gas, was only given after an explosion occurred, it was held that this was too uncertain to sustain a recovery. *Lodge v. United Gas Improvement Co.*, 209 Pa. St. 553; *Moore v. Heat & Light Co.*, 65 W. Va. 552.

"It is not enough, it has been said, for the plaintiff to show that he has sustained an injury under circumstances which may lead to a suspicion that there may have been negligence on the part of the defendant, but he must

give evidence of some specific act of negligence." Broom's Legal Maxims (9th ed.) 214.

This was a most unfortunate case, but we cannot find that the appellant established a causal connection between the fire and the negligence charged. There being no prejudicial error in the record, the judgment of dismissal is

AFFIRMED.