JAMES EVERETT FONDA ET AL., APPELLANTS, V. NORTHWESTERN PUBLIC SERVICE COMPANY ET AL., APPELLEES.

278 N. W. 836

FILED APRIL 1, 1938. No. 30166.

*R. H. Beatty* and *Shuman & Overcash*, for appellants.

*Hoagland, Carr & Hoagland* and *William Suhr*, contra.

Heard before GOSS, C. J., ROSE, DAY, PAINE and MESSMORE, JJ., and FALLOON, District Judge.

FALLOON, District Judge.

This is an action for damages brought by Nellie L. Fonda against the defendant gas company and its superintendent, Elmer H. Smith. The plaintiff claimed injuries from asphyxiation caused by the negligence of the defendants in the installation, inspection and maintenance of a gas conversion burner in the heating plant of the plaintiff's home. The defendants admitted the purchase and installation, but claimed it was safe and proper, and that any injuries were caused by plaintiff's negligence. Plaintiff later died and the case was revived in name of her executors, and tried in the lower court. At conclusion of plaintiff's testimony, the trial court sustained motion to discharge jury and dismissed action at plaintiff's costs. Plaintiff appealed, and since one of defendants has died, action has been revived against his administratrix.

The evidence discloses that the defendant corporation was engaged in the installation and servicing of gas and heating equipment, and also in the selling, delivering and furnishing of natural gas therefor in North Platte, and

that the other defendant was its superintendent and foreman in charge. The plaintiff, Nellie L. Fonda, and her husband, James H. Fonda, occupied their dwelling-house in North Platte and had lived there for many years. They were both past 70 years of age and in usual health for their age. Their home had been heated with a coal or other solid fuel furnace in August, 1932, and prior thereto. This furnace had a direct flue connection from the rear of combustion chamber running to the chimney, and below this connection another flue pipe connecting therewith, but which was only about half the length, and at the end of which a clean-out plug was placed, which before the furnace had been connected for gas usage was removable so the accumulated soot could be cleaned out when necessary.

During August, 1932, estimates were made by said defendants for the proper conversion of this Green Colonial furnace to natural gas, and after some conversation agreement was reached about September 10, 1932, and a Sonner Heat machine was installed and everything checked by the defendants and approved by the foreman defendant, Smith, on September 26, 1932. There is no doubt but the defendants installed and claimed that the equipment was proper and safe, and that the same was accepted by James H. Fonda, the owner of the home and the husband of the plaintiff, and a few days later was being operated. Nothing out of the ordinary happened until on Sunday, the 17th of December, 1933, when the servant maid, Edna Hall, occupied the home while the Fonda occupants were on a visit to Omaha, and she testified that in the nighttime she heard a noise or puff, as though something dropped on the basement floor. She called for Clarence Molley, a service employee of the defendant company; he came and she went with him to see what was the matter with the furnace. He opened the furnace front door, relit the pilot-light and left. She further testified that the house warmed up, but she later had a headache, pressing on her lungs, pictures on the wall seemed to dance around, felt she was

going to faint, became sick to her stomach and nauseated. She further testified, when her father came to take her home, she was worse, delirious and hardly knew her father, and that she stayed in bed a day or so, had never had such sickness before, and that she only ate breakfast which usually consisted of coffee.

The testimony further reveals that the plaintiff, Nellie L. Fonda, and her husband returned from Omaha late Tuesday, December 19, 1933, and that a neighbor, Mrs. Elmer Koons, saw Mrs. Fonda when they returned. One of the keys to the Fonda house was left with the Koonses. Elmer Koons took the key over and gave it to Mr. Fonda, talked with him a few minutes and he seemed all right. The next day about dark, because of the receiver being off the telephone at the Fonda home, the telephone company called the Koons home and asked that they investigate. Mrs. Koons went over, could not get in, saw Mrs. Fonda staggering around, so went back and got Mr. Koons, and they unlocked the screen and went into the Fonda home. They found the Fondas in bad shape, clothes disheveled and scattered about, evidence of bowel movements, and neither able to give coherent accounts of themselves. A doctor was called, also the daughter, Mrs. Blanche Tarkington, and Mrs. Koons helped get things in order. Mrs. Koons further stated she was all right when she went over, but she got a headache, though she thought at the time it was the excitement. The daughter and her husband came that night and the Koonses returned to their own home. The daughter later became violently sick, vomited, went to bed, and her husband also had a terrible headache.

A nurse, Janice Ryan, who was called on the case about 10 o'clock the night of the 20th, became dizzy, had headache and was so nauseated that she was relieved by another nurse, and Miss Ryan remained in bed for a few days as a result of her experience.

A neighbor, Mrs. Fred Waltemath, having heard of the illness next door, called the next morning between 10 and 11 o'clock, found both Mr. and Mrs. Fonda groaning and

gasping for breath, and also Mrs. Blanche Tarkington very sick, and also noticed the air in the house offensive. She was there later for a minute or two in the afternoon, then the air was not so bad, as windows and doors were open, but when she returned to her own home she called the gas company and told them she thought the trouble at the Fonda home must be gas, and she thought they should investigate, and that she later saw some of the gas people come almost immediately.

The record conclusively shows that all parties who occupied or visited this home about this time were more or less similarly affected. What the trouble was, or whether any one was negligent, it is necessary to look further for determination.

The plaintiff charged negligence to the defendants in the installation, and particularly in leaving the clean-out plug as it was. Let us see what the record discloses in this regard.

The defendant Elmer H. Smith testified that he was the gas distribution superintendent of the company, that he had examined the Fonda home as to proper installation of a gas conversion burner, later installed it, personally did some of the work, that the job was completed, that gas was turned on, that the company later inspected it at intervals, that the clean-out plug was not needed, that they did not fasten it, that it was pushed in a crimp joint, could be removed by hand with a little pressure and really had no purpose with gas installation, but it need not be fastened, just so it was in place tight. He also testified as to some changes being made as to checking the draft less than 30 days before the eventful night. He also testified as to the danger of the gases formed by the combustion of natural gas. There was also testimony as to certain features of the furnace that were of but little or no value.

The testimony of Clarence Molley, an employee of the defendant company, was to the effect that he went to the Fonda home the morning of December 17, found pilot-light out, doors closed, relit pilot-light, electric controls all

functioning, did not go behind furnace at all or look at clean-out plug as he was only there 20 or 30 minutes.

Dewey Tarkington testified that Charles Gerkin, an employee of the company, Thursday, went into the furnace room, manipulated the valves on the pipe-line, and looked around the back of the furnace, picked up the plug off the floor and replaced it, that when he put the plug in, it went in freely, and that Gerkin then said he thought that was the trouble and that it should be fastened in, and that after that no one else took sick.

Charles Gerkin identified exhibit 12, dated December 21, 1933, which was a work ticket of the defendant company and had the notations thereon of "See if there is a gas leak" and "Vent-pipe off at furnace fixed."

Blanche Fonda Tarkington testified that she talked on Friday, the time of her parents' sickness, to Howard Hopkins, manager of the defendant company, in basement of the home, and he told her "they had found the difficulty and the plug was put back in and we would have no more trouble." He said "it was all fixed," and that after this there was never any trouble with gas appliances or anybody getting headaches or nausea.

The record also shows that on January 9, 1934, about three weeks after the accident, flue connection was changed and cemented up by Charles Gerkin for the defendant company, and according to the architect who made a drawing of the equipment, the clean-out plug "is riveted now."

August A. Luebs, a professor in the University of Nebraska and an expert on installation of gas heating, testified that it was entirely improper, and contrary to accepted practices, to install this gas-conversion burner without strapping or fastening this clean-out plug, so it could not be displaced by a puff or explosion in the furnace, and that if the clean-out plug was displaced, poisonous gases would increase, escape and permeate the house.

One of the doctors testified that the symptoms of one who inhaled gases, particularly carbon dioxide and carbon monoxide, in a closed room, would be severe headache,

throbbing in the temple region, followed by nausea and vomiting. This would also be followed by a complete muscular relaxation of the bladder and lower bowels, and would be depressing on the lungs and heart. This same doctor, in response to a hypothetical question covering the testimony as brought out, stated that in his opinion the immediate sickness caused plaintiff was carbon monoxide poisoning.

That the plaintiff and her husband were in good health for their ages is not disputed, nor is the fact that they both suffered, the husband, James H. Fonda, until he died on January 11, 1934, and the plaintiff, Nellie L. Fonda, who passed away on August 17, 1934.

The testimony clearly shows that the plaintiff was injured, that it was probably occasioned by poisonous gases which escaped from the furnace, and there was sufficient evidence to warrant a jury determining whether the defendants were negligent.

There can be no doubt that a gas company must exercise a high degree of care in dealing in a dangerous commodity, and a failure to do so may render it liable. There is no absolute standard of duty, but it should take every reasonable precaution. The ordinary householder depends upon the experience that the gas company possesses and it is its duty, when selling the commodity and equipment in which it is used, to see that the appliances are not only fit and proper, but also are in proper working order. Inspections otherwise would be useless.

The testimony clearly shows that the defendants made the installation according to their own plans, and that after the installation it was turned over to the Fondas as proper and in working order. The evidence introduced also shows that the clean-out plug may not have been properly installed and it likewise points to this as the source of the asphyxiation. There can be no dispute that the plaintiff was asphyxiated.

In the case of *Mischnick v. Iowa-Nebraska Light & Power Co.*, 125 Neb. 598, 251 N. W. 258, this court said: "It is

possible that the fire may have been caused by a leak in the gas pipe, or by spontaneous combustion in the box of rubbish, or there might have occurred a slight explosion in the furnace, which threw out a flame which ignited some combustible substance, or it might have occurred in some entirely different manner. Proof is entirely lacking as to its exact cause." The fire in that case had destroyed the opportunity to form definite conclusions, but in this case there was no fire and the evidence points to the clean-out plug as being the trouble. This clean-out plug under the evidence came out on the night of December 17 and remained out until the 21st. During the night, people were all afflicted alike, and it is proper that the construction most favorable to the plaintiff, when motion for directed verdict was made, should have been placed thereon, and, if so, it should have been submitted to the jury. The record conclusively shows that after the clean-out plug was replaced no one in the household became sick. There is nothing in the record that shows any other means of gas escape than the clean-out plug. The evidence introduced is not a mere possibility as it was in the *Mischnick* record.

The gas company defendant installed and supervised the equipment and furnished the gas for fuel, and it was incumbent upon it to see that the installation was proper and safe, and, moreover, the company owed a further duty to make reasonable and necessary inspection as will enable it in the exercise of ordinary care to prevent injury or death to the patrons of its service, and for failure thereof the company would be liable.

In the case of *Taylor v. Kings County Lighting Co.*, 286 N. Y. Supp. 36 (247 App. Div. 799), we quote the syllabus: "Gas companies held liable for injuries sustained from partial asphyxiation by occupants of home wherein companies installed gas heater and left, in pipe furnishing a chimney draft to carry off gases, a damper which became easily closed by vibration or otherwise, and interfered with outlet of carbon monoxide which permeated home."

The supreme court of Wyoming in the case of *Miller v.*

*New York Oil Co.*, 34 Wyo. 272, 243 Pac. 118, said: "We must concede, as defendant contends, that it assumed no duty to inspect or maintain the heater, and that it was not liable as an insurer. Its duty was to exercise ordinary or due care in installing the heater, and the plaintiff was required to prove that the duty had not been performed. * * * The defendant, in installing the heater, was required to take all reasonable precautions to guard against known danger that would arise from ordinary use. It knew that the heater should be provided with proper and sufficient means for escape of fumes. By the testimony of its own witnesses it is shown that the installation was defective if the vent pipe of the heater was connected with a clogged chimney."

The gas company's trouble-shooter was called by the maid to look after the furnace trouble of December 17. The inspection should then have been thorough and, if it had been, perhaps no further trouble would have occurred.

Having undertaken this inspection, it was the duty of the appellees to exercise ordinary care in making such inspection and to make any necessary repairs or advise the tenants or owner of the defects and afford an opportunity for them to make such repairs. 28 C. J. 594. The company is not required to keep up a constant inspection, but when its attention is called to the trouble and it undertakes to remedy it, then this inspection, where there may be great danger, should be thorough and efficient. Its liability in that case attaches the moment it assumes that the trouble has been remedied. But whether a company has been negligent or not depends upon the facts, which should be determined by the jury.

Whether the equipment in the first instance was improperly installed or whether the inspection later made about December 17 was careless and incomplete, each of which was alleged as negligence on the part of the defendant company, and whether either was the proximate cause of the injury, were questions that should have been left

to the jury for determination under proper instructions, and upon their findings would depend whether the company or its superintendent was liable.

The proximate cause of an injury is a question of fact, which may be proved by circumstantial evidence and inferences properly drawn therefrom, and the plaintiff in seeking to establish the connection between the defendants' negligence and the injuries need not negative all other possibilities. All the plaintiff was required to do was to establish by a reasonable probability, the allegations of her petition, and if it could be logically inferred therefrom, the facts she sought to establish, then it was a case for the jury and it was error not to so submit it.

"Where facts and circumstances are established from which the manner of sustaining injuries can be logically inferred, an issue is presented for the jury." *Markussen v. Mengedoht;* 132 Neb. 472, 272 N. W. 241.

The defendant Smith testified that he laid out the plans and helped to install the gas equipment. If the clean-out plug was improperly installed, there can be no question of his liability. A foreman of a corporation whose negligence causes injuries is jointly and severally liable with the corporation in an action for damages caused by such injuries. This is the law in this state and has been so held in *Allen v. Trester,* 112 Neb. 515, 199 N. W. 841.

The courts have made a distinction where the employee was not in charge nor actually did the work. In this case, the defendant. Smith did both. The principle has been very well stated by the supreme court of Illinois in *Baird v. Shipman,* 132 Ill. 16, 23 N. E. 384, where it stated: "It is not the agent's contract with his principal which exposes him to or protects him from liability to third persons, but his common-law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable." The court goes on to state: "All this is not doing, but it is not the not doing of that

which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual, in common with all other members of society."

If the installation and inspection, when gas was first used in the Fonda home, were careless and improper, and the company or its superintendent should have known, then it was not necessary that they be further informed. The company was paid for this equipment and installing service. A company engaged in the maintenance of such a dangerous fuel commodity must have employees efficient in their line, and it is bound to anticipate injuries resulting therefrom. The Fondas had a right to trust its workmanship and service and to rely exclusively on its knowledge and skill. Whether the company was negligent is a question for the jury, and the law does not require direct and positive evidence, but it may be inferred from circumstances, if sufficient to satisfy reasonable men.

The trial court struck out certain portions of plaintiffs' amended petition, but we can find no error therein and its ruling should stand.

Under the law and the evidence, the case should have gone to the jury for determination. The judgment will therefore be reversed and the cause remanded.

REVERSED.