CARRIE HARMS, APPELLANT, V. CITY OF BEATRICE, APPELLEE.
5 N. W. (2d) 287

FILED AUGUST 14, 1942. No. 31216.

*Jack & Vette,* for appellant.

*Vasey & Mattoon, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

Plaintiff brought this action to recover for injuries sustained when she stepped on a defective meter box alleged to have been negligently maintained by the city of Beatrice. The trial court sustained a general demurrer to plaintiff's second amended petition and, the plaintiff having elected to stand thereon, entered a judgment of dismissal. Plaintiff appeals.

The petition alleges that the defendant city owned and maintained a system of water-works for the purpose of furnishing water at commercial rates to the inhabitants of the city. As a part of the water-works system the city maintained a meter box on the west side of Fifth street at a point approximately seven feet east of the west line of Fifth street. The meter box was located on a service line connecting the water system with private property and was between the sidewalk and the lot line, a part of the area occupied as a street. The ordinances of the city provided that meters not installed within buildings should be installed on the lot line, that the materials for constructing the meter box and service line would be furnished and installed by the city and paid for at cost by the property owner.

The petition further avers that the meter box was constructed with a metal cover which had, on December 13, 1938, and for several weeks prior thereto, been permitted to get out of repair, all of which was known or should have been known by the city.

On December 13, 1938, at about 6 o'clock in the evening and at a time when darkness concealed the dangerous condition of the meter box located a few inches from the sidewalk, plaintiff accidentally stepped upon it with her left foot, causing the defective covering to give way and causing the injuries, to recover for which this action was brought.

The only question for determination is whether the peti-

tion states a cause of action against the defendant city.

Municipalities are invested with two distinct classes of powers, those of governmental or public character having certain attributes of sovereignty, and those which relate to private or proprietary functions.

It is the duty of the city in the exercise of its governmental functions to keep its streets in a reasonably safe condition for public use. The liability of the city for failing to perform this duty is limited by the following statute: "No city shall be liable for damages arising from defective streets, alleys, sidewalks, public parks or other public places within such city, unless actual notice in writing of the accident or injury complained of with the statement of the nature and extent thereof, and of the time when and the place where the same occurred shall be proved to have been given to the mayor or city clerk thirty days after the occurrence of such accident or injury." Comp. St. 1929, sec. 16-723.

The petition does not allege the giving of the statutory notice of plaintiff's injuries and claim for damages, and consequently the facts pleaded do not state a cause of action against the city for failing to perform its duty in its governmental capacity.

In its proprietary capacity, however, a city is liable to the same extent as a private corporation for negligence resulting in injuries to the public. *Henry v. City of Lincoln,* 93 Neb. 331, 140 N. W. 664; *Cook v. City of Beatrice,* 114 Neb. 305, 207 N. W. 518. Was the city of Beatrice liable in its proprietary capacity in failing to keep the meter box in repair and permitting it to remain in a dangerous condition for weeks prior to the happening of the accident giving rise to the present suit?

There is nothing alleged in the petition which indicates that the meter box was not properly installed with materials and accessories of good quality. The meter box, with its ring and cover, was, however, purchased by the city and furnished the consumer at cost. The ordinances of the city are silent as to the ownership of the service line, all inferences as to ownership by the consumer being drawn from

the fact that he must pay the cost of materials and installation. The question is whether the duty is cast upon the city to keep the meter box in repair, and, if so, the city's liability for failure to do so.

The petition cites no statute or ordinance imposing upon the city the duty to maintain the meter box. An examination of the authorities indicates a hopeless conflict in the decisions of other courts. We will therefore examine the cases in the hope that the reasoning therein contained will point the way to the better rule.

In some of the cited cases the city is relieved of liability on the theory that, the consumer having paid for the service line, it was the property of the consumer and no part of the city's water-works system. As an example, the court in *Jackson v. City of Ellendale,* 4 N. Dak. 478, 61 N. W. 1030, said: "When the city has kept its main pipe in order, and has brought its water to the mouth of the connecting service pipe, and has started that water flowing in that pipe towards the premises of the one who has made such a connection, it has discharged its duty. It is under no obligation to keep in repair a pipe which is not a part of its system, and which it does not own."

And in *Fisher v. St. Joseph Water Co.,* 151 Mo. App. 530, 132 S. W. 288, a leading case on the subject, the city is absolved from liability on the theory that the customer may be required to install the service pipe and curb box, and, having done so, they become appurtenances to the realty and, "as between him and the water company, the burden was his to maintain it in repair."

We do not think that the question of liability in this case can be determined from the nature of the contract between the city and the water consumer. The plaintiff was a member of the traveling public to whom a duty was owed by some one to maintain the water-works system in a reasonably safe condition. We are of the opinion that that duty rests upon the city, irrespective of the terms of its contract with the consumer.

A city acts in its proprietary capacity when it engages in the operation of a water-works system and it is liable for negligence to the same extent as a private corporation engaged in the same business. The operation of a water-works system requires not only a pumping plant and a series of water mains, but it requires service lines to the property of the consumer as well. They all go to make up the distribution system. To say that the pumping plant and water mains alone make up the water-works system is but to fly into the face of fact. Water is not delivered to the consumer when it arrives in the main in front of the consumer's property. It is delivered when it is made available for use.

The fact that the consumer may be required to pay the cost of labor and materials in the installation of the service line does not seem to us to be controlling. Whether this be the means of fixing the connection charge or whether the consumer actually becomes the owner, the fact remains that it is a part of the water-works system which the city is duty bound to maintain in a reasonably safe condition for the protection of the public, irrespective of its contract with the adjoining property owner. While there may be a question whether liability of the consumer to the city exists by virtue of agreements among themselves, a question on which we express no opinion, it seems clear that the city cannot delegate the duty it owes the public to maintain the water-works system in a safe condition.

The situation from a practical standpoint calls for the same conclusion. It is the city which reads the meters and obtains first-hand knowledge of the condition of the service line. The consumer, with little knowledge of the business, relies upon the city in its capacity as operator of the utility to see that water is available for use. This is a duty the city assumes when it undertakes to render the service.

There can be no question that the facts pleaded show that the meter box was in a dangerous condition due to failure to repair. The petition pleads that it was in that condition for several weeks prior to the accident and that the city

ought to have known its condition. Plaintiff had a right to walk where she did, this court having determined that question in *Gates v. City of North Platte*, 126 Neb. 785, 254 N. W. 418, wherein we said: "A city is required to take cognizance of the fact that pedestrians have occasion to walk over the parking strip along a street, and although the pedestrian must expect to find such fixed objects as electric light poles, fire hydrants and meter boxes, and must be contented with a grassy surface instead of a smooth walk, the city must exercise due care to have such area in a reasonably safe condition." We conclude that the petition states a cause of action against the city, a conclusion sustained by the following authorities:

In *Nord v. Butte Water Co.*, 96 Mont. 311, 30 Pac. (2d) 809, the court very aptly said: "The curb-box is clearly a part of the company's 'system of water-works'—its means of controlling the use of water by its customer and the payment of rent therefor. Under its franchise the duty of maintaining this instrumentality in repair for the protection of the traveling public was cast upon the company and by it assumed, and that duty was not affected by the circumstance that the cost of labor and materials used in the construction of the connecting box was paid by the occupant or owner of the property."

In *Washington Gas Light Co. v. District of Columbia*, 161 U. S. 316, 16 S. Ct. 564, the court said: "We conclude, therefore, that the duty was imposed upon the Gas Company to supervise and keep the gas box in repair. This duty not only does not conflict with the charter of the company, but on the contrary is sanctioned by its tenor, and is imposed as an inevitable accessory of the powers which the charter confers. Nor do we think that this duty was affected by the circumstances that the cost of the labor and materials used in the construction of the connection and gas box was paid by an occupant or owner of property who desired to be furnished with gas. As the service pipe and stop cock was a part of the apparatus of the company and was used for the purpose of its business, it is entirely immaterial who paid

the cost, or might in law, on the cessation of the use of the service pipe and gas box by the company, be regarded as the owner of the mere materials. Certainly, it would not be claimed that if the box and its connections became so defective or out of repair that gas escaped therefrom and caused injury, that the company could legally assert that it was under no obligation to take care of the apparatus, because of the circumstance that it had been compensated by others for its outlay in the construction of the receptacles from which the gas had escaped."

And in *City of Des Moines v. Des Moines Water Co.*, 188 Ia. 24, 175 N. W. 821, the court said: "It is unnecessary, therefore, to attempt any very exact definition of the mutual rights and obligations of the company and the customer or property owner whom it serves. The company, by its franchise or its contract with the city, is granted a license to use the streets for the construction of its system. Of necessity, this implies the right, under proper regulation, to lay its mains and pipes beneath the surface, and at many points to extend them under and across the course of public travel; and, as a matter of law, it must be held to be an implied condition of such license that these instrumentalities by which it distributes its water supply to its patrons shall be constructed and maintained with reasonable care for the safety of those who are lawfully exercising the primary right of the public to use the streets for the purposes of travel."

As has been said, the liability of a city in conducting a utility in its proprietary capacity is the same as that of a private corporation engaged in the same business. Notice is not required as a condition precedent to liability. The foregoing cases, in our opinion, announce the better rule, and in applying it to the case at bar, the petition states a cause of action. The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.