**MATTSON v. CENTRAL ELECTRIC & GAS CO. et al.**

No. 13705.

United States Court of Appeals Eighth Circuit.

April 11, 1949.

Rehearing Denied May 17, 1949.

RIDDICK, Circuit Judge, dissenting.

William L. Walker, of Lincoln, Neb. (Max G. Towle, of Lincoln, Neb., on the brief), for appellant.

Max Kier and R. O. Williams, both of Lincoln, Neb., for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment for defendant entered on a directed verdict. The action was one brought by C. Russell Mattson as Administrator of the Estate of William Brehm, deceased, to recover damages for the death of William Brehm by the alleged wrongful act of the Central Electric & Gas Company under the death statute of the State of Nebraska.

At the time of receiving the injuries from which he later died, William Brehm was employed as a custodian or janitor in the Capitol School Building in Lincoln, Nebraska. On December 19, 1945, while so employed, there was an explosion which blew him out of the furnace room of the school building and inflicted bruises and burns upon him from which he later died. The explosion was caused by escaping natural gas. He is survived by his widow and three minor children. It was plaintiff's claim that the explosion resulting in the death of William Brehm was caused by gas which escaped from the gas pipes serving the Capitol School Building, through the negligence of the Gas Company in that the Company failed properly to inspect and keep in repair the gas pipes conveying the natural gas to the school building.

Plaintiff seeks reversal on substantially the following grounds: (1) the court erred in directing a verdict for the defendant Gas Company because it failed to apply the substantive law of the State of Nebraska; (2) the court erred in deciding as a matter of law that actual notice of defect in supply pipe or of escaping gas was necessary before the Gas Company had a duty of inspecting, detecting and repairing a gas leak or defect in the supply line which extended from the curb or street to the meter in the school building; (3) the court erred in de-ciding as a matter of law that the Gas Company was not required to maintain an efficient system of inspection under the law of the State of Nebraska and that it had no duty to use due and reasonable care in inspection of its supply pipes and lines to insure reasonable promptness in discovery of leaks that may occur, and said issue should have been left to the jury; (4) the court erred in deciding as a matter of law that even though the Gas Company's predecessor installed the supply pipes and line from its main to the School District's meter at the School District's expense, the supply pipes and line were not a part of the Gas Company's system and that it owed no duty to care for its natural gas after it left its main.

As has been observed, the judgment appealed from was entered in favor of the defendant on a verdict directed by the court at the close of all the evidence. To warrant the direction of a verdict the evidence must be such that all reasonable minds can come to only one conclusion on the facts. When minds may reasonably differ as to what the verdict should be on the evidence, the cause should be submitted to the jury. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.

As the court directed a verdict in favor of the defendant, we must view the evidence in a light most favorable to the plaintiff and accept all evidence favorable to the plaintiff as true and as proving all facts which it reasonably tended to prove, and plaintiff is also entitled to the benefit of all inferences fairly deducible therefrom. Viewing the evidence in this light, the jury might reasonably have believed that about twenty-seven years prior to the time of the catastrophe causing the death of plaintiff's decedent, defendant's predecessor installed a gas service line connected with its gas line and extending from the street curb line to the Capitol School Building, in which building it installed a gas meter. Since that time defendant and its predecessor have used this service line for conveying its gas to the meter in the Capitol School Building. The Gas Company is a public service company engaged

in supplying and distributing natural gas to the inhabitants of the City of Lincoln, Nebraska. The School District paid the Gas Company for the material and labor in installing this service line, the material being selected by the Gas Company. The pipe was black iron or steel pipe. The School District was a customer of the Gas Company and the gas supplied to the school building was passed through a meter belonging to the Gas Company as it was delivered to the School District. The pipe used had a servicable life of from ten to fifteen years. From the time of its installation to the time of the explosion, this service pipe was not dug up and inspected, nor otherwise inspected, except that there was a superficial inspection of the service pipe made by the Gas Company once or twice in the spring of each year or along in the summertime. The inspection consisted of an examination of the grass or the top surface of the ground under which the pipe was laid. Repairs to the service lines, if any, were made by the Gas Company and under no circumstances would the Gas Company permit an independent plumber or any other person to make such repairs. The service line was laid under the school yard which was open ground, accessible at any point, so that the Gas Company had an opportunity to make any inspections or repairs desired. Investigation and inspection made subsequent to the explosion disclosed that portions of the service pipe had become rusted, corroded, decayed, porous and perforated with holes, which permitted the natural gas to escape so that it percolated, seeped and traveled to the coal bins of the Capitol School Building and accumulated in the coal basement and exploded, causing plaintiff's decedent's death.

The trial court was of the view that as a matter of law defendant had no duty to inspect the service line connected with or extending from the street curb to the school building and was not liable because of the lack of actual notice of the defects in the service line.

The governing substantive law is that of the State of Nebraska. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We do not believe that the Supreme Court of Nebraska has squarely passed upon the law issue presented by this case in any gas case. The court has, however, had before it somewhat analogous situations and made some pronouncements which may not have been essential to the determination of the issues, but "Considered dictum of that court should not be ignored when a federal court is attempting to construe or ascertain the meaning of the local law, whether it be the state statute or the State Constitution." Badger v. Hoidale, 8 Cir., 88 F.2d 208, 211, 109 A.L.R. 798. See, also: Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488; Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610. The Nebraska cases most strongly urged upon our attention are Fonda v. Northwestern Public Service Co., 134 Neb. 430, 278 N.W. 836; Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N.W. 712; Tarkington v. Northwestern Public Service Co., 138 Neb. 278, 292 N.W. 720; Harms v. City of Beatrice, 142 Neb. 219, 5 N.W.2d 287, 142 A.L.R. 239; Clough v. North Central Gas Co., 150 Neb. 418, 34 N.W.2d 862. All of these Nebraska cases involved personal injuries resulting from explosion or asphyxiation by gas, except the Harms case. The gas cases confessedly are all distinguishable in their facts from the instant case. In all of the cases the question of the liability of the Gas Company was held to be one of fact to be determined by the jury.

The Gas Company's liability is dependent upon negligence. Natural gas is of a highly dangerous character and it has a tendency to escape. It is therefore the duty of a public utility distributing natural gas for public use to exercise every reasonable precaution to avoid injury or death by the escape of gas while it is being carried through its pipes to the consumer. The care required to prevent injury or death must be commensurate with the danger which it is its duty to avoid. In the exercise of this degree of care it is the duty of the Company not only to install pipes and fittings of good material and workmanship but to see that the equipment when installed and laid is maintained in a reasonably safe condition. In Fonda v. Northwestern Public Service Co., 134 Neb. 430, 278 N.W. 836, 839, it is, among other things,

said: "There can be no doubt that a gas company must exercise a high degree of care in dealing in a dangerous commodity, and a failure to do so may render it liable. There is no absolute standard of duty, but it should take every reasonable precaution. The ordinary householder depends upon the experience that the gas company possesses and it is its duty, when selling the commodity and equipment in which it is used, to see that the appliances are not only fit and proper, but also are in proper working order. Inspections otherwise would be useless."

In Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N.W. 712, 718, a companion case growing out of the same accident, the court, among other things, said: "A company, engaged in the maintenance of such a dangerous fuel commodity, must have employees efficient in their line, and it is bound to anticipate injuries resulting from the use of such commodity. The Fondas had a right to trust the workmanship and service and rely exclusively upon the company's knowledge and skill in the installation and inspection of gas burners and equipment."

In Tarkington v. Northwestern Public Service Co., supra, which was a companion case of the Fonda cases, the pleadings, issues and evidence were substantially the same and the jury returned a verdict for plaintiff and on appeal the Supreme Court affirmed.

In the recent case of Clough v. North Central Gas Company, supra, there was an ordinance which required the gas company to keep in repair and maintain all pipe lines up to and including the meters, without cost to the customers. Among other things it was contended that this was an unreasonable and arbitrary regulation and that it impaired the franchise contract which the Gas Company held. In discussing this question, the court reviewed a number of decisions and quoted with apparent approval from Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, as follows: " 'As we view it, this fact alone would not absolve the company from liability. The gas which caused the damage was defendant's gas, and was turned into the pipes by defendant with knowledge on its part that it was a highly dangerous substance and subject to escape. Through the duly appointed agents and employees, defendant was charged with knowledge that its gas was being transported through the pipes in question.' " [150 Neb. 418, 34 N.W.2d 872.]

The gas company in the Julian case contended, as in the instant case, that it was not the owner of the pipes at the point where the gas escaped, and hence, was not charged with the responsibility of inspection nor liable for injuries caused by faulty materials which it did not own.

In Manning v. St. Paul Gaslight Company, 129 Minn. 55, 151 N.W. 423, 424, L.R.A. 1915E, 1022, Ann.Cas. 1916E, 276, the owner of the building paid the cost of the installation from the lot line to the meter. In the course of the opinion the court said: "The gas belongs to defendant until sold and delivered through its meter in the consumer's building, and therefore defendant should be responsible for its care until it is so measured and delivered. We are unable to find any sound basis for making defendant's care and vigilance to prevent the escape of its dangerous product any less between the meter and the lot line, than between the lot line and the retort where manufactured. Whether defendant owns the pipes in which its gas is confined or not is not important, for, the fact remains, such pipes are of its choosing as to kind, quality, and method of installation. They are not subject to the care or interference of any one but defendant."

In Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 568, 40 L.Ed. 712, quoted with approval in Harms v. City of Beatrice, supra, the Supreme Court, in speaking of the duty of the gas company to inspect the gas line, among other things said: "Nor do we think that this duty was affected by the circumstances that the cost of the labor and materials used in the construction of the connection and gas box was paid by an occupant or owner of property who desired to be furnished with gas. As the service pipe and stopcock was a part of the apparatus of the company, and was used for the purpose of its business, it is entirely immaterial who paid the cost, or might, in law, on the cessation of the use of the service pipe

and gas box by the company, be regarded as the owner of the mere materials. Certainly, it would not be claimed that, if the box and its connections became so defective or out of repair that gas escaped therefrom and caused injury, the company could legally assert that it was under no obligation to take care of the apparatus, because of the circumstance that it had been .compensated by others for its. outlay in the construction of the receptacles from which .the gas had escaped."

 In their facts these cases are so similar to the instant case that it seems to us that in principle they can not be distinguished. The Company, as has been observed, furnished the material and laid these pipes and used them for the transmission of its gas to its meter in the school building. The natural gas which the Company was transmitting through this pipe was of highly dangerous character and it owed a duty to the public to exercise a degree of care commensurate with the danger involved in the transaction of its business. It knew when this gas line was laid and it was its duty to know what the probable life of the gas pipe would be in the soil where it was laid. While the defendant did not have actual notice that gas was escaping from this perforated pipe, it did know that gas would escape from a perforated pipe and it was charged with knowledge, at least the jury might have so found, that this pipe had probably become perforated. It knew that the pipe had been in the ground for more than twenty-five years and it, rather than the plaintiff's decedent, should have known what the condition of the pipe was and the danger arising from its deteriorated condition. Under the circumstances disclosed by the record the jury might properly have charged the Company with constructive notice and if so that notice is just as effective as actual notice. While the foundation of liability for negligence is knowledge, in law an opportunity by the exercise of reasonable diligence to acquire knowledge is equivalent to knowledge, and one under a duty to use care for which knowledge is necessary cannot avoid liability because of voluntary ignorance. The Company had the sole right to make repairs, and according to the testimony of its manager it would under no circumstances permit an independent plumber or any other person to make repairs to its service line. But Brehm was not the owner of the property being served, nor the consumer of natural gas, but was one of the public who as such was entitled to protection.

Not only was there evidence to warrant the jury in finding the defendant negligent because it was charged with notice as to the defective condition of this service pipe, but the evidence warranted the jury in believing that it made a superficial inspection twice a year. On this matter defendant's manager was interrogated and testified as follows:

"Q. And what is the fact as to whether or not the defendant company, during the time that you were employed by them, inspected the service pipe running from the curb up to the Capitol School Building? A. Well, it never was inspected. That is, the service pipe itself dug up and inspected.

"Q. And an examination was never made of the pipe itself during the twenty some years that you worked for the defendant company? A. No, sir; not to my knowledge.

"Q. As I understand it, from talking with you at recess, you have a sort of a casual or superficial test of the service drum, is that true? A. Yes, sir.

"Q. And somebody with the defendant company would do that once a year, would they not? A. Well, we try to once or twice in the year, in the spring and along in the summertime.

"Q. But that would only be an examination of the grass or the surface—the top? A. Yes, sir."

This witness also testified with reference to this pipe line as follows:

"Q. Maybe I don't make myself clear. Who would look after and repair any leak if it occurred in the service line from the curb line up to the building? A. Our distribution department would take care of that if there was any trouble.

"Q. That would be the gas company? A. Yes, sir.

"Q. Would you under any circumstances permit an independent plumber or any other person to make those repairs? A. No, sir."

Having in mind that the court directed a verdict in favor of the defendant, and hence we must view the evidence in a light most favorable to the plaintiff, we think this was some evidence that the defendant asserted the exclusive right to make repairs on this service pipe and that it and it alone had dominion over this pipe. It would tolerate no interference with this pipe even by the customer, and this, doubtless, because the pipe contained the deadly gas of the defendant. In these circumstances it made the inspections referred to. Having so undertaken to make inspection and having denied the right to any other person to make repairs on the pipe, it was its duty to exercise proper care and skill in so doing, and whether it had done so was, we think, a question of fact to be determined by the jury.

In Harms v. City of Beatrice, supra, the Supreme Court of Nebraska held the city liable for negligence to the same extent as a private corporation engaged in the same business. In the course of the opinion the court said [142 Neb. 219, 5 N.W.2d 289]:

"The operation of a water-works system requires not only a pumping plant and a series of water mains, but it requires service lines to the property of the consumer as well. They all go to make up the distribution system. To say that the pumping plant and water mains alone make up the water-works system is but to fly into the face of fact. Water is not delivered to the consumer when it arrives in the main in front of the consumer's property. It is delivered when it is made available for use.

"The fact that the consumer may be required to pay the cost of labor and materials in the installation of the service line does not seem to us to be controlling. Whether this be the means of fixing the connection charge or whether the consumer actually becomes the owner, the fact remains that it is a part of the water-works system which the city is duty bound to maintain in a reasonably safe condition for the protection of the public, irrespective of its contract with the adjoining property owner."

This declaration by the Supreme Court of Nebraska makes it clear that the service pipe line was a part of the Gas Company's system. The mere fact that the materials and labor going into its construction were paid for by the property owner is quite immaterial as between a member of the public and the Gas Company. In the Harms case there was no ordinance nor statute imposing upon the city the duty to maintain the service line. The trial court sustained a demurrer and dismissed the case but the Supreme Court reversed. In the opinion in that case the court quotes with approval from City of Des Moines v. Des Moines Water Co., 188 Iowa 24, 175 N.W. 821, and also cites with approval Washington Gaslight Company v. District of Columbia, supra.

It is suggested on behalf of appellee that in view of the unsettled state of the law in Nebraska we should accept the opinion of the trial judge as determinative. In considering this question we must make reference to that opinion. There were in fact two opinions by the trial judge, one in connection with the granting of defendant's motion for a directed verdict, and the other on denial of plaintiff's motion for a new trial. We do not think either of these opinions throws any light on the question as to the law of Nebraska. They do not purport to follow or to be influenced by any adjudication by the Supreme Court of Nebraska. Thus, in the first opinion it is said: "I have to say that I do not consider that the Nebraska authorities are conclusive or controlling upon the issue at all."

In the second opinion it is said, in referring to the law of Nebraska: " * * * the court is persuaded that there is no Nebraska statute or judicial deliverance that settles, or even persuasively indicates, a direct local rule upon the question."

Entertaining this view, the trial judge exercised his own independent judgment, uninfluenced by anything that had been said by the Nebraska courts. In exercising this judgment there is no thought of forecasting what the Nebraska Supreme

Court will probably hold, but the opinion reflects what the Judge thinks the law ought to be. It is our view that the trial judge was in error in concluding that there were no pronouncements by the Nebraska Supreme Court, either directly or in considered dictum, indicating the views of that court, and hence, we think the Federal court is not at liberty to substitute its independent judgment, uninfluenced by the adjudications of the Supreme Court of Nebraska.

Under the Nebraska decisions the Gas Company could not delegate the duty it owed to the public to exercise proper care to maintain its gas system in a safe condition, but it had the continuing duty to exercise proper care to prevent injury from escaping gas. Hence, the mere fact that the service pipe was paid for and possibly was the property of the consumer, did not shift the duty of exercising proper care. The gas in the service pipe, as before noted, was that of the defendant, and as long as it remained its property it was under the duty of using proper care to protect the public from injury caused by the dangerous propensities of that property. A proper regard for the safety of the public would seem to forbid the owner of such a dangerous agency to avoid liability for damage by simply housing such property in a container belonging to some one else, particularly when the owner of such dangerous agency knows, or is charged with knowledge, that the housing or container facilities are in a decayed, dilapidated and deteriorated condition. The agents and employees of the Company are presumably skilled in the business of their employer. They knew, or were presumed to know, the probable life or durability of the materials used, and where the pipes have been in use as long as the pipes in the instant case, the jury might reasonably find that the Company was charged with notice of their condition.

Generally, the question of negligence is one of fact. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Bailey v. Central Vermont R. Co., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967.

Under the decisions of the Supreme Court of Nebraska we conclude that it can not be said, under the applicable law, that there was no negligence on behalf of the defendant, but the facts were such as to require that question to be submitted to the jury. The judgment appealed from is therefore reversed and the cause remanded with directions to grant the plaintiff a new trial.

RIDDICK, Circuit Judge (dissenting).

A short section of the gas service line running across the school property from the gas company's main line in the street to the meter in the basement of the school building became corroded and defective to such an extent that gas leaked into the basement of the building causing an explosion in which the school janitor was fatally injured.

The distance from the gas company's pipeline in the street to the school building was approximately 150 feet. The defective portion of the service line was under a concrete pavement constructed by the school district after the installation of the gas line. Nothing in the evidence tends to show how the defective condition of this section of the pipe could have been discovered by the exercise of ordinary care either by the school district or by the gas company. In this case the discovery was made by cutting through the concrete pavement near the school building and digging up the pipe which was laid three feet below the surface.

The service line from which the gas escaped was the property of the school district and was located on property under its control. There was neither allegation nor proof that the gas company either by contract, custom, or franchise provision was under any duty to maintain or to inspect the service line on the school property or that it had any notice, or knowledge that would put it on notice, of any defect in the service line. In the words of the district judge who tried the case, "there is not the slightest evidence or suggestion of knowledge or notice on the defendant's part of any defect in the condition of the service pipe. In fact the plaintiff disclaims that as an issue." An official of the gas company testified that never to his knowledge had the company

made any inspection of the gas service line on the school property. This is the only reasonable interpretation to be placed upon the testimony of the witness, quoted in the majority opinion. The service drum which the witness said was casually inspected once or twice a year is not identified in the evidence, though certainly it is not the service line. But, if the interpretation placed upon this testimony in the majority opinion is permissible, it does not follow, because casual inspections of the service line were made when none was required, that by this voluntary action on its part the gas company became the insurer of the safety of the service line or that it assumed control or dominion over it.

Nor can I see anything in the testimony of the official of the gas company, quoted in the majority opinion, to the effect that if repairs were needed the gas company would make them to the exclusion of independent plumbers, on which to base a finding that the gas company had assumed complete control and authority over the service line on the school property. This statement, in final analysis, is nothing but the opinion of the witness as to the power of the gas company to insist upon the exclusive right to repair pipelines of its customers which it neither owns nor controls. There is nothing in the record to show that the gas company had such a privilege under its franchise. But, if we assume that the company in fact asserted it and that it had the right to enforce it, all that the testimony tends to show is that the gas company, on receipt of notice of a defect in the pipeline, would repair it at the expense of the owner. Only after notice would the privilege ripen into an obligation.

The effect given in the majority opinion to the testimony discussed above seems to me to impose upon a distributor of gas the liability of an insurer in respect to the condition of service lines owned by and under the control of its customers; or, at least, where defects because of covering pavements or other construction by the service line owner can not otherwise be discovered, to impose upon the utility, in the exercise of ordinary care, the burden of periodic excavation of all gas service lines owned and controlled by its customers.

The service line had been installed on the school property by the predecessor of the gas company on the order and at the expense of the school district. There is no claim that it was negligently constructed or that the pipe used in the installation was not of a character and quality usually employed for such service. On the other hand, the pipe used in the construction of the service line was of the kind customarily employed in the City of Lincoln, Nebraska, where the accident occurred. The only suggestion to the contrary comes from the testimony of a witness for the plaintiff who had been engaged in the plumbing business in Lincoln for about 40 years. This witness testified that the average life of pipe of the kind used in the service line was approximately 15 years in some soils, but he made it plain that the life of the pipe would depend upon the character of the soil in which it was laid. Asked about the soil surrounding the pipe in the school yard, he said: "Well, I wouldn't be no analyst of the ground, but I went to school there when I was only up about the third grade, I think; but outside of that, as far as the soil, I wouldn't know."

He admitted that pipe of the same kind had been in service in Lincoln for as long as 40 years. Moreover, the service line had been in service on the school property for more than 25 years, and only one small section of it had deteriorated. Since there was no charge of negligence in the installation of the pipe, the admissibility of this testimony was at least open to question, but, if admissible, it does not rise to the dignity of proof.

Plaintiff's sole reliance for recovery against the defendant gas company was the claim that as a matter of law, because of the known dangerous character of gas and its tendency to escape, the company was under the duty of inspecting and maintaining service lines on the property of its customers and liable for any damage or injury resulting from escaping gas from defective service lines, although, as plaintiff admits, the gas company was without notice or knowledge of the defect in the line. The rule almost universally prevailing in other States is directly to the contrary. It is that, in the absence of notice of the defec-

tive condition of the customer's service line or appliances, the gas company is under no obligation to repair them, and is not liable for accidents resulting from their defective condition. On receipt of notice or upon the assumption of the duty of maintenance, repair, and inspection, the gas company is required to act with diligence and dispatch to remedy the defective conditions or to prevent accidents which may result from them. It may discharge its duty by cutting off the gas at the cut-off valve in the street until such time as the customer has placed his service line in satisfactory condition, or it may remedy the defective condition at the expense and with the consent of the owner. In this case the proof is that it was the practice of the gas company to make repairs on receipt of notice that repairs were necessary. And no court has ever held that a company distributing gas to the public is an insurer of the safety of the facilities owned by it or under its control. The company must exercise ordinary care to maintain the equipment owned and controlled by it in safe operating condition. Ordinary care in the circumstances must be commensurate with the known tendency of gas to escape and the dangers likely to result from escaping gas.

When this case was tried in the district court, the Supreme Court of Nebraska had not passed upon the precise question involved. This is admitted by the plaintiff. The trial judge, after reviewing Nebraska decisions relied on by plaintiff and cited in the majority opinion, concluded "that there is no Nebraska statute or judicial deliverance that settles, or even persuasively indicates, a direct local rule upon the question." Careful examination of the Nebraska decisions as of the time of the trial of this case convinces me that the trial judge was correct in this statement. In these circumstances, the Nebraska decisions remaining unchanged, this court should accept the opinion of the trial judge on a doubtful question of Nebraska law under our decisions in Russell v. Turner, 8 Cir., 148 F.2d 562, 564, and Abbott v. Arkansas Utilities Company, 8 Cir., 165 F.2d 339, 340. For certainly it cannot be said that in this case the trial judge was not deciding a question of Nebraska law simply because the Nebras-

ka court had not ruled upon the applicable Nebraska law at the time of this trial. But, since this case was tried in the district court and submitted to this court, the Supreme Court of Nebraska has decided the case of Clough v. North Central Gas Company, 150 Neb. 418, 34 N.W.2d 862, 865. This case, in my opinion, clearly sustains the conclusion reached by the trial judge.

The Clough case was an action to recover damages sustained in a gas explosion caused by a leak in a customer's service line. Two questions were decided by the Nebraska court. One concerned the validity of an ordinance imposing upon the gas company the duty to install and maintain, at its own expense, all service lines on the property of its customers from the gas company's main line in the street to the meter in the customer's building; the other, the duty of a gas company, on receipt of knowledge that a service line owned by its customer was corroded to such an extent as to permit gas to escape. The answer to the second question is stated in the syllabus prepared by the court:

"A legal duty of a gas company as to third persons in reference to the escape of gas from service lines owned and controlled by others on private property, and leading from the company's pipes in the street to its meter in the consumer's building, which pipes have been properly installed and tested, determined to be safe for use, and actually safely used for some time, does not extend to thereafter making inspection of said service pipes, unless the company has knowledge of a probable defective condition in such pipes, or has knowledge of circumstances rendering it probable that gas is escaping therefrom, or unless the company is bound by contract, franchise, or custom to make such inspection.

"Where a public utility company engaged in the business of furnishing gas to its customers knows or should know that a service line owned by a customer is corroded to such an extent as to permit gas to escape, it is its duty either to cause the service line to be repaired by the customer, or to have the gas shut off at the street where the main is that furnishes the gas to the customer, in order to avoid the danger which might result."

The concluding paragraphs of the opinion are:

"Thus, where it appears that a gas company has knowledge that gas is escaping in a building occupied by one of its consumers it becomes the duty of the gas company to shut off the gas supply until the necessary repairs have been made, although the defective pipe apparatus does not belong to the company and is not in its charge or custody. See Clare v. Bond County Gas Co., 356 Ill. 241, 190 N.E. 278.

"We believe the record discloses evidence sufficient from which the jury could find that the gas company had notice of the dangerous condition existent, and if it did have such notice, it becomes a question for the jury whether or not it made proper inspection and repairs with reference thereto."

Numerous cases from other jurisdictions sustaining the rule announced in the Clough case were cited by the Nebraska court.

It may be noted that in the Clough case the gas company, on receipt of complaint from the customer that gas was leaking, made an inspection which failed to locate the source of the trouble; and further that, in citing the case of Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, the Nebraska court was answering the gas company's argument that the mere fact that it did not own the service pipe on the customer's property absolved it from liability. In the Julian case the gas company did not own the service line, but it had complete control of and dominion over it. All that the Oklahoma court said in the opinion is that if the gas company had control of the service line it could not escape liability on the plea that it did not own it.

It is not important, if true, that the ruling of the Nebraska court in the Clough case concerning the duty of the gas company in respect to a pipeline owned and controlled by its customer was not necessary to decision of the case. It is sufficient that the Nebraska court has decided the question exactly as it was decided by the district court in this case.

The question in this case is controlled by the substantive law of Nebraska. Cases from other jurisdictions are of no importance since the decision of the Clough case. Nevertheless, the cases cited in the majority opinion from other jurisdictions are distinguishable from the present case on the facts. The distinction between this and the Julian case, supra, has been pointed out. The defective appliance involved in Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712, like that involved in the Nebraska Harms case, was situated in a public thoroughfare for the use and convenience of the utility and was under its control and dominion. The customer of the utility whose service line connected with it had nothing to do with its operation and maintenance. The court held that the mere fact that the franchise of the utility permitted it to require the customer to pay for the original construction of the appliance did not relieve the utility from liability resulting from a failure to use ordinary care in its maintenance for the safety of persons using the thoroughfare. In Manning v. St. Paul Gaslight Co., 129 Minn. 55, 151 N.W. 423, L.R.A.1915E, 1022, Ann. Cas.1916E, 276, the defective service line was on the property of the customer of the utility and installed at his expense. But the complaint alleged and the proof showed that the service line had been carelessly and defectively installed by the gas company, and that its negligence in this respect permitted the escape of gas. On these facts the Minnesota court held that the mere fact that the customer had paid for the installation and owned the pipe was not sufficient to relieve the gas company from liability for its negligence in installing the service line in a dangerous and insufficient manner.

The judgment of the district court should be affirmed.